UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————X
                                                    :
MARY ELIZABETH CHAMBERS,
                                                    :
                  Plaintiff,                        :     Civil Action No. 14-cv-02032 (RBW)
                                                    :
        - against -                                 :
                                                    :     PLAINTIFF MARY ELIZABETH
DISTRICT OF COLUMBIA,                               :     CHAMBERS' MEMORANDUM IN
                                                    :     OPPOSITION TO DEFENDANT
                  Defendant.                        :     DISTRICT OF COLUMBIA'S MOTION
                                                    :     FOR SUMMARY JUDGMENT
                                                    :
—————————————————————X    ————————————————————————

        Plaintiff Mary Elizabeth Chambers, by and through the undersigned counsel Johnnie

Louis Johnson III and the Law Offices of Johnnie Louis Johnson III LLC hereby submits this

memorandum in opposition to Defendant District of Columbia's motion for summary judgment.

There are numerous genuine material facts that are in dispute in this matter which have to be

resolved through the trial of this matter and a motion for summary judgment cannot resolve these

material facts, therefore a trial on the issues must be scheduled unless this matter can be resolved

through mediation.

        Plaintiff Mary Elizabeth Chambers believes, contrary to Defendant District Columbia's

contention, that a reasonable jury would find that Defendant District of Columbia violated Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. §

1981(a) by subjecting Plaintiff Mary Elizabeth Chambers to willful and unlawful employment

discrimination based on her sex (female) and by retaliating against her because she objected to

and opposed Defendant District Columbia's unlawful and discriminatory employment practices.

Plaintiff Mary Elizabeth Chambers alleges that she was discriminated against when she was: (a) denied requested transfers while similar situated male co-workers were provided with requested transfers; (b) subjected to discipline that was more harsh than similarly situated males who committed similar infractions or greater infractions; (c) not provided with the same opportunity to receive incentive and special awards as her co-workers; (d) denied a desk audit; (e) willfully denied an audit of her time and attendance sheets which resulted in substantial delays of her correct pay check amounts; (f) denied the opportunity to receive donated time from her co-workers which resulted in a substantial delays of her correct pay check amounts; (g) assigned an excessive work load that was designed to cause her to not successfully perform her job which would cause her to be removed from her position and from the District of Columbia government; (h) willfully delayed with the misprocessing of her paychecks; and (i) willfully delayed with the approval of her Family Medical Leave.

I.                          BACKGROUND

Plaintiff Mary Elizabeth Chambers initiated this lawsuit in November 2014 against Defendant District of Columbia in the United States District Court of the District of Maryland but the case was subsequently transferred to this Court. See Mary Chambers v. Office of the Attorney General, et al. C.A. No. Gilli-14-3648 [ECF#1]. Plaintiff Mary Elizabeth Chambers filed an Amended Complaint which was dismissed by the Court and Plaintiff Mary Elizabeth Chambers appealed to the District of Columbia Court of Appeals; See Chambers v. Office of the Attorney General, 2016 U.S. App Lexis 234656 (D.C. Cir. 2016) (per curiam); This Court vacated the dismissal and provided Plaintiff Mary Elizabeth Chambers with the opportunity to respond to Defendant District of Columbia's motion to dismiss. Plaintiff Mary Elizabeth Chambers responded to Defendant District of Columbia's motion to dismiss and the Court ruled

2

ruled on Plaintiff Mary Elizabeth Chambers' Second Amended Complaint, which alleges

discrimination based on sex (female).  The current issues in this case are discrimination based on

sex (female) and retaliation.

II.                                PRELIMINARY STATEMENT

Plaintiff Mary Elizabeth Chambers was previously employed in Defendant District of

Columbia's Child Support Services Division (CSSD) in October 1989 as a Support Enforcement

Specialist.  Plaintiff Mary Elizabeth Chambers, as a Support Enforcement Specialist, provided

assistance to recipients of Temporary Aid to Needy Families (TANF) with benefits and assisted

recipients of TANF to obtain and enforce child support orders and judgments.  In 2000, Plaintiff

Mary Elizabeth Chambers was assigned to the Interstate Unit of CSSD. The Director of CSSD is

Deputy Attorney General Benidia Rice.

Plaintiff Mary Elizabeth Chambers in order to advance and to become well rounded

as a Support Enforcement Specialist requested the Assistant Program Operations Chief, Walter

Howell to allow her to be transferred to another unit. (Plaintiff Mary Elizabeth Chambers'

Affidavit, page   ¶   , ("Chambers Aff'd)" ).  Plaintiff Mary Elizabeth Chambers' request was

denied allegedly because she was the only person who handled the establishment cases in her

office. (Chambers' Aff'd., p. ) ¶ )  In response to the denial, Plaintiff Mary Elizabeth Chambers

stated that because she would not be working on establishment cases after the reorganization, there

should be no problem for her to transfer to another unit. (Chambers' Aff'd., p.   ¶    ).  In addition,

Plaintiff Mary Elizabeth Chambers also advised the Manager of the Interstate Unit that she had been

trying to transfer to the Interstate Unit since 2008.  The Manager of the Interstate Unit responded to

Plaintiff Mary Elizabeth Chambers' request allegedly after consultation with the Assistant Program

Operations Chief and the Deputy Attorney General, Benidia Rice by advising Plaintiff Mary

Elizabeth Chambers that he was unaware that she had requested a transfer to the Interstate Unit since 2008 but acknowledged that Plaintiff had made requests "on several occasions during the current fiscal year 2010." (Chambers' Aff'd, p. , ¶ ). The Manager of the Interstate Unit then informed Plaintiff Mary Elizabeth Chambers that management had explained to her that such a reassignment allegedly does not fit into management's immediate plans for the Interstate Unit."[1]  Plaintiff Mary Elizabeth Chambers was also told that under the reorganization her new work assignment would be to perform critical enforcement functions.  Although certain male employees were permitted to transfer, Plaintiff Mary Elizabeth Chambers was told that it was imperative that the Interstate Unit maintain, at a minimum, its current staffing level. (Chambers Aff'd, p. ¶ ). There was no mention what those staffing levels were at the time. Therefore, it was decided that Plaintiff Mary Elizabeth Chambers' request to transfer would be denied. (Chambers Aff'd, p. ¶ ).

Plaintiff Mary Elizabeth Chambers was, however, not moved to the Intake as she has specifically requested but she was transferred to the Enforcement Unit and given an entirely different job title. (Chambers Aff'd, p. ¶ ). In April 2010, Plaintiff Mary Elizabeth Chambers was falsely accused of being rude to a customer and recommended for a four-day suspension.  Plaintiff Mary Elizabeth Chambers filed a grievance.  The proposed four-day suspension, after a hearing was reversed by an arbitrator. (Chambers Aff'd, p. ¶ ).

Plaintiff Mary Elizabeth Chambers decided on March 4, 2011 to file a charge of employment discrimination with the EEOC alleging sex discrimination and retaliation because a male co-worker was granted a transfer to another Unit, but she and another female co-worker were denied such a transfer. (Chambers Aff'd, p. , ¶ ). Plaintiff Mary Elizabeth Chambers alleged further that the male co-worker had weekly communication problems and performance issues with customers but was not disciplined.  In addition, Plaintiff Mary Elizabeth Chambers

---

[1] There never has been any explanation just how the transfer would not "fit into the Interstate Unit."

alleged that in January 2011 her caseload was taken from her and she was reassigned to another unit without being provided with proper training. (Chambers Aff'd, p. ¶   ).

Plaintiff Mary Elizabeth Chambers again in September 2011 requested a transfer by switching her assignment with another employee to the Intake Unit. Benidia Rice again denied Plaintiff Mary Elizabeth Chambers' request for a transfer.  Benidia Rice alleged that she had discussed Plaintiff Mary Elizabeth Chambers' transfer request with the supervisor of the Intake Unit and was told that the supervisor did not need Plaintiff Mary Elizabeth Chambers in the Intake Unit. Although Benidia Rice stated that her reason for denying Plaintiff Mary Elizabeth Chambers' request was based on the statement of the supervisor of the Intake Unit, there is evidence that no request of Plaintiff Mary Elizabeth Chambers for a transfer was ever approved. In fact, Plaintiff Mary Elizabeth Chamber had spoken with the supervisor who specifically told Plaintiff Mary Elizabeth Chamber that she was welcomed in the Unit. (Chambers Aff'd, p. ¶   ).

Plaintiff Mary Elizabeth Chambers requested a desk audit in May 2012. Plaintiff Mary Elizabeth Chambers believed that she was performing work at a higher grade level. The Chief Counsel for Personnel, Labor and Employment Division, Nadine Chandler Wilburn denied the desk audit and alleged that it could not be performed because Plaintiff Mary Elizabeth Chambers was seeking a desk audit on temporary work that she was no longer performing. Plaintiff Mary Elizabeth Chambers was provided with a desk audit in November 2012.

Plaintiff Mary Elizabeth Chambers experienced a medical condition and she was out of work from November 2, 2014 until May 4, 2016. (Chambers Aff'd, p.7, ¶31). Plaintiff Mary Elizabeth Chambers was transferred to the Intake Unit on her return to work, but her job title was changed from Support Enforcement Specialist to an Investigator. (Chambers Aff'd, p.7, ¶31). Plaintiff Mary Elizabeth Chambers is currently employed as an Investigator. (Chambers Aff'd p.

¶ 3). Plaintiff Mary Elizabeth Chambers exhausted her administrative remedies and sought relief

by contacting the Equal Employment Opportunity Commission (EEOC) and filed a charge of

employment discrimination. Prior to going to the EEOC, Plaintiff Mary Elizabeth Chambers

sought a remedy by contacting the Managers at Defendant District of Columbia, the Union, the

District Council 20's Chief Executive Officer, the former Section Chief Adrienne Day, the

former Section Chief Joseph Allen, the former Deputy Director Cory Chandler, the Director of

CSSD Benidia Rice, Eugene Adams and, Nadine Chandler Wilburn. (Chambers Aff'd, pp.1-2, ¶

3). Plaintiff Mary Elizabeth Chandler also requested assistance from Tarifah Coaxum, the

Former FMLA/Payroll Manager Danielle Coleman, former Fiscal Officer of the District of

Columbia Victoria Syphax, former Ward 8 City Council member Marion Barry and his staff

Jackie Ward, the Director of the Office of Inspector General Charles Willoughby and Emily

Hosenback from the OIG Office, Former Mayor Vincent Gray and his colleagues Jason Carr.

(Chambers Aff'd, pp.1-2, ¶ 3). No action was taken by the former Mayor's office. Plaintiff Mary

Elizabeth Chambers also contacted to Helena Trimmer the Equal Employment Opportunity

Officer. A member of former City Council member Marion Barry's staff member did meet with

Nadine Chandler Wilburn regarding her caseload, but no relief was obtained. (Chambers Aff'd,

pp.1-2, ¶ 3).

   Plaintiff Mary Elizabeth Chambers was discriminated against by Defendant District of

Columbia when it decided to transfer various male employees but failed and refused to transfer

Plaintiff Mary Elizabeth Chambers to another unit. In fact, the evidence reflects that Plaintiff

Mary Elizabeth Chambers submitted a transfer request to former Managers Jamia Dueberry and

Walter Howell, who informed her that she could not receive a transfer because she had to work

another co-worker's caseload because that co-worker was out of the office. (Chambers Aff'd, p.

2, ¶ 6). In addition, the former District Council 20 Staff Representative Stephen White submitted a request to Nadine Chandler Wilburn who stated that there was no transfer for her but if anything changes in the future she would be notified. (Chambers Aff'd, p. 2, ¶ 7). Plaintiff Mary Elizabeth Chambers' former Psychologist Joy Berry also requested that she be approved for a transfer and move on February 4, 2014, which was also denied by Defendant District of Columbia. (Chambers Aff'd, p. 2, ¶ 7). It appears that Plaintiff Mary Elizabeth Chamber submitted over 20 requests to be transferred to another division within the Office of General Counsel which were all denied. (Chambers Aff'd, p. 2, ¶ 7).

Defendant District of Columbia willfully delayed completing Plaintiff Mary Elizabeth Chambers medical forms from TransAmerica for well over a year under the pretense that there was a need to determine that she had a disability within the meaning of the Americans with Disabilities Act (ADA). On several occasions, the OAG sent me a Medical Questionnaire form for my doctors to complete, allegedly so that the OAG could determine whether my continued absence qualified as an accommodation under the ADA. (Chambers Aff'd, p. 3, ¶ 9). Although Plaintiff Mary Elizabeth Chambers had provided medical documentation of her illness, Defendant District of Columbia provided Plaintiff Mary Elizabeth Chambers with a Medical questionnaire to be completed before she could return to work. (Chambers Aff'd, p. 3, ¶ 10).

Plaintiff Mary Elizabeth Chambers received threats by two co-workers in the same unit on April 24, 2013 and on May 23, 2013. It does not appear that any action was taken by Defendant District of Columbia to protect Plaintiff Mary Elizabeth Chambers from the two individuals or to make certain that Plaintiff Mary Elizabeth Chambers was safe. (Chambers Aff'd, p. 3, ¶ 12). It also appears that Defendant District of Columbia had decided to just ignore Plaintiff Mary Elizabeth Chambers' complaints. For example, Plaintiff Mary Elizabeth Chambers

submitted a complaint to her manager regarding LoToya Young using profanity in the Workplace and she was threatened by LoToya Young. In this instance, no action was taken to ensure that Plaintiff Mary Elizabeth Chambers was safe from this employee. (Chambers Aff'd, p. 3, ¶ 13).

Although Defendant District of Columbia decided to take no action against those employees who threatened Plaintiff Mary Elizabeth it appears that it has no problem with taking disciplinary action against Plaintiff Mary Elizabeth Chambers. For example, Defendant District of Columbia decided to take disciplinary action against Plaintiff Mary Elizabeth Chambers and suspended her four-day based on an erroneous allegation that she used certain language against a member of the public that eventually was determined to not be accurate. (Chambers Aff'd, p. 3-4, ¶ 14). Plaintiff Mary Elizabeth Chambers filed a grievance and the suspension was rescinded by an arbitrator with direction that all reference to the four-day suspension be removed from her personnel file and that the leave she lost be restored. (Chambers Aff'd, p. 3-4, ¶ 14). It now appears that Defendant District of Columbia has not removed the documents from Plaintiff Mary Elizabeth Chambers' personnel file. (Chambers Aff'd, p. 3-4, ¶ 14). In addition, the thirty-two (32) hours of leave that Plaintiff Mary Elizabeth Chambers lost because of the suspension have not been restored to her. (Chambers Aff'd, p. 4, ¶ 15). In addition, Defendant District of Columbia has willfully delayed the processing of Plaintiff Mary Elizabeth Chambers funds and she was placed on leave without pay (LWOP) which meant that her leave was taken away from her me when I was placed on LWOP. (Chambers Aff'd, p. 4, ¶ 15).

The evidenced reflects that Plaintiff Mary Elizabeth Chamber experienced an act of retaliation when she received an e-mail from Benidia Rice regarding reconsideration of a request to switch the assignments of Juana Massey Wright and Plaintiff Mary Elizabeth Chambers. (Chambers Aff'd, p. 4, ¶ 17). That request like the other requests submitted by Plaintiff Mary

8

Elizabeth Chambers was denied. In fact, the act of retaliation is quite evident when consideration is given to the fact that Plaintiff Mary Elizabeth Chambers made a transfer request to work with Patricia Williams' Intake Unit because she heard that she was planning to retire. (Chambers Aff'd, p. 4, ¶ 17). Because Plaintiff Mary Elizabeth Chambers had trained the co-workers in the Intake Unit and because she had seniority over the employees who were transferred to the Intake Unit there should not have been a problem with the transfer request. (Chambers Aff'd, p. 4, ¶ 17). Defendant District of Columbia denied Plaintiff Mary Elizabeth Chambers request although Patricia Williams did retire. (Chambers Aff'd, p. 4, ¶ 17).

Plaintiff Mary Elizabeth Chambers reported various acts committed by Defendant District of Columbia regarding the promotion of Keisha McCauley-Jackson in November 2012 before the announcement was even posted to the OIG, to Eugene Adams and the former Union President Sabrina Brown. (Chambers Aff'd, p. 4, ¶ 19). Plaintiff Mary Elizabeth Chambers reported that friends, family, babysitter, church members, in-laws, lovers of Upper Management, Director, and Managers can receive transfers to other Units, but she was unable to receive a transfer. (Chambers Aff'd, pp. 4-5, ¶ 19). Defendant District of Columbia's stated reason that everyone had to apply for a transfer when a position comes up or is posted appears to be a pretext designed to refuse Plaintiff Mary Elizabeth the opportunity to receive a transfer. (Chambers Aff'd, pp. 4-5, ¶ 19).

Plaintiff Mary Elizabeth Chambers identified various male employees who were transferred without any problems. For example, Thurston Haynes was transferred from the Data Reliability Unit, First Response Unit to Customer Service Unit and then back to Data Reliability Unit without any problems. (Chambers Aff'd, p. 5, ¶ 20). In addition, Clivens Dorvil was hired to work in the Director's Office of CSSD Policy Unit as a Policy Training then was promoted to

Manager of the First Response Unit and then was transferred back to the Policy Unit. (Chambers Aff'd p. 5, ¶21). Fernando Myrie was hired to work in the Medical Unit, Enforcement Unit until he was removed due to his disrespectful conduct to a customer daily. He was then moved to the Intake Unit under Patricia Williams and then moved again to the System Automatic Unit and is now in the Intake 1 Unit. (Chambers Aff'd p. 5, ¶22). Sadaaq abdul-Haqq always worked in the file room. Joseph Allen started out as a Temporary employee but was made a permanent employee as a Support Enforcement Specialist. He is the only employee in the Records Management Unit that is a grade 9. It appears that Defendant District of Columbia stated reason that each person is required to work in her job description in denying Plaintiff Mary Elizabeth Chambers requests for a transfer is usually waived when male employees seek a transfer. (Chambers Aff'd p. 5, ¶23). For example, Tionne Jordan was hired in DRU but was placed in the Customer Service Unit and then transferred back to DRU. He was on a not to exceed date but was terminated from work after working in the OAG/CSSD for 5 years and 5 months. (Chambers Aff'd p. 5, ¶24). Tionne Jordan and Thurston Haynes were caught about to fight and using profanity in the office in front of co-workers and their Manager Rocelia Johnson, but nothing was ever done to them. (Chambers Aff'd p. 5, ¶24).

Justin Latus who works in AZ Child Support and in OAG/Child Support Services Division was allowed to transfer his seat due to loud noises. In addition, Robert Ratchford was allowed to transfer although he was charged with a DWI offense and using a government vehicle on the weekend of June 2017. (Chambers Aff'd pp. 5-6, ¶25). James Sager was detailed for over five years to Child and Family Services before being recently terminated. (Chambers Aff'd p. 6, ¶25).

Defendant District of Columbia erroneously alleged that Plaintiff Mary Elizabeth

Chambers contended that the OAG retaliated against her filing the February 2011 Charge of discrimination by assigning her an "excessive caseload designed to "overwhelm her so that she would be unable to successfully perform my work and to be subjected to a removal action from her position and from the District government. Plaintiff Mary Elizabeth Chamber denies making that statement but clarifies that she actually stated that she has always worked a full caseload since 2000, when she worked in the Enforcement Unit RSI Enforcement worker until CSSD hired Jacqueline Owen. (Chambers Aff'd p. 6, ¶28). Plaintiff Mary Elizabeth Chambers stated that she worked that caseload very well and she had to work Angelia Williams' caseload when she was out on sick leave and she had no backlog. (Chambers Aff'd p. 6, ¶28).

Plaintiff Mary Elizabeth Chambers states that Jamai Deuberry entered and changed her time which delayed the receipt of her paycheck on time which has resulted in her paycheck continuing to be short of the amount that it should be. (Chambers Aff'd p. 6, ¶29). In addition, Plaintiff Mary Elizabeth Chambers states that Defendant District of Columbia willfully delayed the paperwork for her FMLA for her brother was delayed. In fact, Plaintiff Mary Elizabeth Chambers had to seek help from Mia Brown in Payroll to obtain the signature on the documents. (Chambers Aff'd p. 7, ¶ 30).

Plaintiff Mary Elizabeth Chambers states that she out of the office on leave from November 2, 2014 to May 4, 2016 because of a serious health condition which was not acknowledged until February 22, 2016. Plaintiff Mary Elizabeth Chambers states that she was just listed as being on LWOP and there was no request for leave donations and her requests for short term/long term disability and workers compensation benefits were denied. (Chambers Aff'd p. 7, ¶ 31).

Plaintiff Mary Elizabeth Chambers states that she requested a desk audit from 2008 until 2012 I requested a Desk Audit. (Chambers Aff'd p. 7, ¶ 32). Plaintiff Mary Elizabeth Chambers stated that Benidia Rice falsely stated that she did not know that Plaintiff Mary Elizabeth Chambers carried a full caseload, although she signed off on her performance rating each year. (Chambers Aff'd p. 7, ¶36).  Plaintiff Mary Elizabeth Chambers also stated that Benidia Rice alleged that she spoke to Patricia Williams before making the decision about her transfer to Patricia Williams' unit.  Plaintiff Mary Elizabeth Chambers states that the allegation is false because Plaintiff Mary Elizabeth Chambers personally requested Patricia Williams to permit her to transfer to the Intake Unit and was told that she was welcomed into that unit. (Chambers Aff'd p. 8, ¶39). Plaintiff Mary Elizabeth Chambers states that she believes that the denial of her transfer after she obtained approval by Patricia Williams was an act of retaliation because she filed a charge of discrimination with the EEOC.  (Chambers Aff'd p. 8, ¶37).

Plaintiff Mary Elizabeth Chambers also states that she submitted her heath notes and other health notes from my doctors on December 4, 2014 but they evidently were not good enough because it took Defendant District of Columbia until February 22, 2016 to decide that she had a serious medical condition.  Moreover, it still took the OAG until May 4, 2016 to accommodate her request for an accommodation. (Chambers Aff'd p. 8, ¶39).  Plaintiff Mary Elizabeth Chambers states that she was not transferred to the Intake Unit as she requested but to the Locate Unit not as a Support Enforcement Specialist as an Investigator.  Plaintiff Mary Elizabeth Chambers states that she believes that her title was changed from a Support Enforcement Specialist and to an Investigator to delay her step increase, and to remove her duties as a Notary. (Chambers Aff'd p. 8, ¶39).  Plaintiff Mary Elizabeth Chambers states that her

belief was confirmed when she was notified four months later that Nadine Chandler Wilburn and Benidia Rice stated that the Locate Unit did not need a Notary in that Unit, although there are notaries in that unit, and she has seniority over the two staff members that are Notaries in that unit. (Chambers Aff'd p. 8, ¶39).

Plaintiff Mary Elizabeth Chambers states that she believes that she was subjected to unlawful discrimination because she was denied incentive and special awards while her male co-workers received such awards. Plaintiff Mary Elizabeth Chambers states that Fernado Myrie, Jatus Latus, Bryant Boykin, Clivens Dorvil, and Thurston Haynes received incentive, special awards and promotions and she did not although she worked a full caseload and never received recognition. (Chambers Aff'd p. 8-9, ¶ 40).

Plaintiff Mary Elizabeth Chambers states that she sent an e-mail to Karl Racine complaining that Nadine Chandler Wilburn and Eugene Adams were making all the decisions on her case even though they are the alleged discriminatory officials. Plaintiff Mary Elizabeth Chambers states that she does not believe that she can ever receive a fair decision because there are conflicts of interest. (Chambers Aff'd p. 9, ¶ 43).

Plaintiff Mary Elizabeth Chambers states that Defendant District of Columbia has willfully made continuous errors on her leave and payroll records which resulted in her having to wait until next pay to receive her remaining pay. Defendant District of Columbia also took too much leave from her and did not use the leave she had and placed her on LWOP when she had leave to use. Plaintiff Mary Elizabeth Chambers stats that Nadine Chandler Wilburn willfully took (4) months to repay her for the 4-days suspension that was rescinded. (Chambers Aff'd p. 9, ¶ 45).

Plaintiff Mary Elizabeth Chambers states that Clive Dorvil was moved from the Policy Unit to the First Response Unit although he never applied for the position. In fact, Plaintiff Mary Elizabeth Chambers stated that Clive Dorvil did not know the position and asked for help including from her. (Chambers Aff'd p. 9, ¶50). Justin Latus was moved out of CSSD, but he received his regular hours although he worked part-time. Justin Latus' seat was moved due to loud noise and the Director Benidia Rice was his supervisor in the AZ Child Support Unit and Justin Latus received numerous incentives and bonuses and promotions during his time in the OAG as a part-time worker. (Chambers Aff'd p. 11, ¶51). Plaintiff Mary Elizabeth Chambers states that Bryan Boykin was moved because his girlfriend Tiffany Cox and he were unable to stay out of each other's work area. (Chambers Aff'd p. 11, ¶ 51). Plaintiff Mary Elizabeth Chambers states that James Sager was moved because he was falsely accused of sexually harassing her, but she wrote a letter stating that he did not sexually harass her. (Chambers Aff'd p. 11 ¶52). Plaintiff Mary Elizabeth Chambers states that the only difference between her and the 9 males who were granted transfer is that she is a female. (Chambers Aff'd p. 11 ¶54). Plaintiff Mary Elizabeth Chambers stats that her requests for transfers were denied because she is a female. (Chambers Aff'd p. 11 ¶54). In addition, Plaintiff Mary Elizabeth Chambers states that she was retaliated against and denied a transfer because she refused to whiteout a Notary petition and because she reported the white out incident to the Notary Board. (Chambers Aff'd p. 11 ¶55). In addition, Plaintiff Mary Elizabeth Chambers states that she was further subjected to a hostile work environment because she reported the notary violation to the Notary Board. (Chambers Aff'd p. 11 ¶55).

Plaintiff Mary Elizabeth Chambers states that she knew that the four-day suspension was the beginning of a Notice of Proposed Removal from the Office of the Attorney General and the

District of Columbia government. (Chambers Aff'd p. 12 ¶ 58). Plaintiff Mary Elizabeth

Chambers states that because Defendant District of Columbia did not have a non-discriminatory

reason for recommending her suspension because the allegations against her were false and

fabricated and a pretext to take further disciplinary action against her. (Chambers Aff'd p. 12 ¶

59).  Clivens Dorvil submitted one false incident report on her but no disciplinary action was

taken against him.  In addition, Robert Ratchford was found to have used a government vehicle

on the weekends to move another co-worker LaShawn Wright, but Defendant District of

Columbia ever took any disciplinary action against him or to LaShawn Wright.  Plaintiff Mary

Elizabeth Chambers states that although she never engaged in the conduit to which the male

employees engaged but she received disciplinary actions by Defendant District of Columbia.

(Chambers Aff'd p. 12 ¶ 63).

Plaintiff Mary Elizabeth Chambers states that the disparate treatment of her is recognized

because she photographed Dennis Howard and Fernado Myrie using a government vehicle

during work hours and reported it Defendant District of Columbia's management officials never

took any disciplinary action against them but stated that I was merely speculating. (Chambers

Aff'd p. 13-14 ¶ 68).  Plaintiff Mary Elizabeth Chambers states that she believes that Defendant

District of Columbia retaliated against her for filing a charge of employment discrimination with

the EEOC in February 2011. (Chambers Aff'd p. 14 ¶ 70). Plaintiff Mary Elizabeth Chambers

states that Defendant District of Columbia retaliated against her because she is the only senior

staff member in the Interstate Unit who was removed from her current assignment and duties

although she had more seniority than other staff members. (Chambers Aff'd p. 12 ¶ 72).  Plaintiff

Mary Elizabeth Chambers states that she did make a statement that when she was moved to the

Enforcement Unit that Defendant District of Columbia assigned her the highest caseload and

provided her with a "How to Guide Book" for her to learn how to work and process her new caseload in the Enforcement Unit. (Chambers Aff'd p. 15 ¶ 72-73). Plaintiff Mary Elizabeth Chambers believes that the high caseload was designed to overwhelm her even though she had the highest caseload and processed more cases than similarly situated male employees. (Chambers Aff'd p. 15, ¶ 73. Plaintiff Mary Chambers states that Defendant District of Columbia continually processed her pay check so that there would be insufficient funds available even when she had leave to use. (Chambers Aff'd p. 16, ¶ 75). Plaintiff Mary Elizabeth Chambers states that she then requested an audit of my payroll records in early 2011 but the audit was commenced in 2014 with Tarifah Coaxum and Danielle Coleman and the Payroll Manager LaShawn Washington. When LaShawn Washington stated that there were errors in the payroll records, the audit was suspended. LaShawn Washington stated that she needed to discuss the errors with the former Chief of Payroll Victoria Syphax before the audit could continue. When I requested a date for the continuation of the audit, LaShawn Washington would always state that it would take place later. (Chambers Aff'd p. 16 ¶ 75). Plaintiff Mary Elizabeth Chambers states that when she requested the status of my audit from LaShawn Washington and Nadine Chandler she did not receive a response. (Chambers Aff'd p. 16 ¶ 75). Plaintiff Mary Elizabeth Chambers states that when he attorney requested the status of her leave audit, in June of 2016, another audit was scheduled to be conducted by Nadine Chandler Wilburn. However, when Nadine Chandler Wilburn's leave audit was conducted, Plaintiff Mary Elizabeth Chambers states that it was still not done correctly and appeared to have corrupt data entered in the records. (Chambers Aff'd p. 16 ¶ 75). Plaintiff Mary Elizabeth Chambers states that, on September 25, 2018, the Management Liaison Specialist for the Personnel, Labor & Employment Division in Human

16

Resources, Tameya Monk, notified her that her payroll and leave records for 2014 were incorrect. (Chambers Aff'd p. 16 ¶ 75)

Plaintiff Mary Elizabeth Chambers states that Defendant District of Columbia's Information Technology Department has not verified that her caseload was no higher than the caseloads of any other Support Enforcement Specialist, although Benidia Rice attempted to obtain data from 2011 when she worked in in the Interstate Unit to the current time period, but Harold Johnson verified that the requested data was not provided.  (Chambers Aff'd p. 17 ¶77). Therefore, Defendant District of Columbia's contention that Plaintiff Mary Elizabeth Chambers' caseload was no larger than any other Support Enforcement Specialist is not correct by its own records. (Chambers Aff'd p. 17, ¶77).

Plaintiff Mary Elizabeth Chambers states that the evidence reflects that she was assigned and carried more cases that her co-workers, which with the evidence regarding the discriminatory treatment she received would be more than enough for a reasonable jury to believe that CSSD did assign her more cases than her co-workers.  Moreover, Plaintiff Mary Elizabeth Chambers testified during her depositions that she was handling more cases than her co-workers beginning in 2000 through 2011 in the Interstate Unit.  (Chambers Aff'd p. 17, ¶78). Plaintiff Mary Elizabeth Chambers states that Defendant District of Columbia has continually delayed the processing of her payroll records and has continually made errors in her pay checks. Plaintiff Mary Elizabeth Chambers states that Defendant District of Columbia's Central Payroll Manager informed her that there was only one step that had to be done in order to correct her timesheets and to submit them to the Central Payroll Manager for processing.  Plaintiff Mary Elizabeth Chambers states when she informed the Central Payroll Manager that Nadine Chandler

Wilburn stated that Tarifah Coaxum contacted the Central Payroll Manager and promised that condition

The failure and refusal of Defendant District of Columbia to properly and correctly process Plaintiff Mary Elizabeth Chambers' payroll records has resulted her checking account being overdrawn.  Plaintiff Mary Elizabeth Chambers believes that the delay is willful because Defendant District of Columbia delayed the processing of her check when she was given an award in her arbitration case in January 2012 and it took Defendant District of Columbia four months to receive my money, but she never has received her leave. (Chambers Aff'd p. 17, ¶81).

Plaintiff Mary Elizabeth Chambers states that Danielle Coleman decided to contact her doctor's office to determine if he even signed off on my FMLA paperwork, but Defendant District of Columbia does not take such action regarding its male employees. (Chambers Aff'd pp. 18-19, ¶ 83). Defendant District of Columbia's Andrew Kelly the Chief of Investigations Andrew Kelly decided to question employees Karen Adebiyi, Yvette Marbury-Long and Ann Hammond to determine why they donated leave to her during the time she was out on leave away from the office. (Chambers Aff'd pp. 18-19, ¶ 83).  Andrew Kelly also questioned her co-workers about what they knew about Plaintiff Mary Elizabeth Chambers' parents' health condition and why did they give her leave.  Plaintiff Mary Elizabeth Chambers believes that this action was also willful and designed to retaliate against her because no other employee was treated the same way. (Chambers Aff'd pp. 18-19, ¶ 83).  Plaintiff Mary Elizabeth Chambers states that she always worked a full caseload in the Interstate Unit since she was an outstanding performer in completing my assignments without any assistance from other co-workers and she never worked a temporary assignment. (Chambers Aff'd pp. 18-19, ¶ 86).  Plaintiff Mary Elizabeth Chambers states that it is a false statement that Patricia Williams was never asked if

18

she could transfer into her Unit.  In addition, Plaintiff Mary Elizabeth Chambers states that

Patricia Williams was ordered by Benidia Rice to not allow her to transfer into her unit.

(Chambers Aff'd pp. 18-19, ¶ 87).

III.                                                STANDARD OF REVIEW

Federal Rules of Civil Procedure 56(a) states that summary judgment may be granted to a

party if the moving party shows that there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law.  A motion for summary judgment should

not be granted, however, when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there are genuine issues as to

any material fact in dispute. Fed.R.Civ.P 56(c).  A material fact, of course, is a fact that may

affect the outcome of the litigation in question. When here are grave doubts about certain

statements and the weighing of evidence, the task of determining the credibility of a witness is

the exclusive domain of the fact finder.  Thus, a plaintiff may defeat a motion for summary

judgment by presenting direct or circumstantial evidence that raises a genuine issue of a material

fact as to whether an impermissible factor such as sex motivated the employer's adverse

employment decision. Diamond v. Colonial Life & Acc Ins. Co., 416 F.3d 310, 319 (4th Cir.

2005).

Where there is a disputed issue of fact, the Court must resolve all doubts and inference to

be drawn therefore in favor of the no-moving party. Anderson v. Liberty Lobby Inc., 477 U.S.

242, 255 (1986).  The evidence presented must be viewed in a light most favorable to the non-

moving party. Anderson, 477 U.S. 265. If the inferences to be drawn from the evidence establish

a genuine issue as to a material fact, summary judgment cannot be granted.  In order to defeat a

motion for summary judgment, the plaintiff need only present evidence from which a jury might

return a verdict in her favor. <u>Anderson,</u> 477 U.S. at 257. Moreover, a plaintiff need not cast

doubt on each proffered [nondiscriminatory] reason [for the adverse employment action] taken

against her in a vacuum. <u>Beyer-Liberto v. Fountainbleau Corp.</u>, ___ F.3d ____., 2015 WL

2116849, at 13 (4th Cir. May 7, 2015).  Motions for summary judgment in employment

discrimination cases must be approached with added vigor because credibility and intent are

often central issues. Direct evidence supporting claims of intention discrimination is rare and

affidavits and depositions should be carefully scrutinized for circumstantial proof.  The Judge in

ruling on a motion for summary judgment must view the evidence presented through the prism

of the substantial evidentiary burden.  In order to defeat a motion for summary judgment a

plaintiff need only present evidence from which a jury might return a verdict in his favor.

<u>Anderson,</u> 477 U.S. at 257.  In order to avoid summary judgment under Title VII, a plaintiff need

not cast doubt on each proffered [nondiscriminatory] reason [for the adverse employment action]

taken against her in vacuum.  Moreover, if the defendant offers a bagful of legitimate reasons

and the plaintiff manages to cast doubt on a fair number of them, plaintiff may not need to

discredit the remainder of the reasons. <u>Swierkiewicz v. Sorema, N.A.,</u> 534 U.S. 506 (2002); Se

also <u>St Mary's Honor Ctr v. Hicks,</u> 509 U.S. 511 (1991); See, <u>Fuentas v. Perskie,</u> 32 F3d 759,

764 (3d Cir. 1996).

 A plaintiff must first establish a prima facie case of employment discrimination by

presenting some evidence sufficient to infer that unlawful discrimination took place. <u>McDonnell

Douglass v. Green,</u> 411 U.S. 792, 802 (1973).  The employer must then provide a rebuttal by

submitting evidence of a legitimate nondiscriminatory reason action taken. If the employer does

so, then the plaintiff must prove by a preponderance of the evidence that the reason offered is

pretextual. <u>Id.</u>, at 804; <u>Swierkiewicz v. Sorema,</u> N.A., 534 U.S. 506 (2002); See also <u>St Mary's</u>

Honor Ctr v. Hicks, 509 U.S. 511 (1991). The precise requirement of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic. Id. In order for Plaintiff Mary Elizabeth Chambers to establish the employer transferred similarly situated male employees to the unit. McDonnell Douglass, 411 U.S. at 802. Plaintiff Mary Elizabeth Chambers has shown that she is a female, that she was requested and was qualified for a transfer treated different that her mile co-workers and the here was a hostile work environment based on sex (female) and Plaintiff Mary Elizabeth Chambers was adversely affected by the hostile work environment. Defendant District of Columbia has not provided any reasonable explanation for the failure to transfer Plaintiff Mary Elizabeth Chambers to another assignment but the erroneous allegation that there was no change in grade. Plaintiff Mary Elizabeth Chambers was substantially impacted because Defendant District of Columbia willfully changed her job title from a Support Enforcement Specialist to an Investigator, which was designed to delayed or prevent her from receiving her within grade increase and a promotion. Because Defendant District of Columbia willfully denied Plaintiff Mary Elizabeth Chambers' requested transfers to other units but granted such transfers to similarly situated male employees, who did not even request a transfer, is not only disparate treatment based on sex (female) but appears to be acts of retaliation because she opposed Defendant District of Columbia's discriminatory action against her. Beyer-Liberto v. Fountainbleau Corp., ___ F.3d ___., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015). Therefore, Plaintiff Mary Elizabeth Chambers, a female over the age of 40 years, has made out a prima facie case of sex (female) discrimination. Defendant District of Columbia has attempted to proffer a nondiscriminatory reason for the adverse action of refusing to transfer Plaintiff Mary Elizabeth Chambers, the burden shifts back to the plaintiff to produce credible evidence that the reason offered by the defendant is a mere pretext for unlawful

sex (female) discrimination and retaliation. <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglass</u>, 411 U.S. at 804. It is enough if the actions complained of are materially adverse. Thus, a plaintiff is protected from sex (female) discrimination and retaliation that produce an injury or harm. <u>Burlington</u>, 548 U.S. at 68. Plaintiff Mary Elizabeth Chambers has shown that she has been harmed by Defendant District of Columbia's sex (female) discrimination and retaliation because she has been prevented from receiving a promotion as a Support Enforcement Specialist and will now be delayed in receiving a within grade increase. See <u>Beyer-Liberto</u>, ___ F.3d ___., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015); <u>McDonnell Douglass</u>, 411 U.S. at 802; <u>Swierkiewicz</u>, 534 U.S. at 509; <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 511. Plaintiff Mary Elizabeth Chambers also has established a prima facie case of retaliation because she participated in protected activity by filing complaints of discrimination with the EEOC and Defendant District of Columbia knew and was provided with the charges of employment discrimination.

Moreover, where there is evidence of pretext combined with evidence of a prima facie case of employment discrimination based on sex (female), a hostile work environment and retaliation, a motion for summary judgment is defeated, but the evidence of pretext with the combined evidence of a prima facie case of employment discrimination is sufficient to obtain a judgment for the plaintiff. <u>Sanderson</u>, 530 U.S. 133, 135 (2000).

In this instance, Plaintiff Mary Elizabeth Chambers has presented a prima facie case of employment discrimination based on sex (female), hostile work environment, harassment and retaliation, therefore Defendant District of Columbia's motion for summary judgment is not only defeated but the evidence of pretext is sufficient to obtain judgment for Plaintiff Mary Elizabeth Chambers. The evidence shows that Defendant District of Columbia created a hostile work environment, and when Defendant District of Columbia took employment actions that were

continuously adverse to Plaintiff Mary Elizabeth Chambers by refusing to transfer her to her requested unit in which could properly perform her assignments but transferred various male employees in some instances when they did not even request a transfer. (Chambers Aff'd, pp. ¶¶.    ).

The causal connection between the Plaintiff Mary Elizabeth Chambers' complaints of discrimination to Defendant District of Columbia's management officials and Plaintiff Mary Elizabeth Chambers' charges of employment discrimination filed with the EEOC and the substantial delay in the processing of her time given by her co-workers are clearly seen as acts of retaliation in this instance. (Chambers Aff'd pp. ¶¶ ). Beyer-Liberto v. Fountainbleau Corp., ___ F.3d ____., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015); Beyer-Liberto v. Fountainbleau Corp., ___ F.3d ____., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015); Ross v. Communications Satellite Corp., 759 F.2d 35, 365 (4th Cir. 985); Dwyer v. Smith, 867 F.2d 184, 190-91 (4th Cir. 1989). Therefore, Defendant District of Columbia' motion for summary judgment should be denied in its entirety and judgment should be granted to Plaintiff Mary Elizabeth Chambers. Id

Plaintiff Mary Elizabeth Chambers requests that the Court deny Defendant District of Columbia's motion for summary judgment in its entirety and enter judgment for Plaintiff Mary Elizabeth Chambers. In the alternative, Plaintiff Mary Elizabeth Chambers requests that this Court schedule this matter for a trial, as soon as possible. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). "In doing so the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Id. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to

believe. That is, the court should give credence to the evidence favoring the non-movant as well

as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to

the extent that that evidence comes from disinterested witnesses." Id. (quoting 9A Charles Allan

Wright Arthur R. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995)).

    In order to make out a prima facie case of retaliation in violation of Title VII, a plaintiff

must show that (1) she engaged in protected activity, (2) the exercise of that protected activity

was known to the defendant, (3) the defendant took an employment action that was adverse to

the plaintiff, and (4) there is a causal connection between the protected activity and the adverse

employment action. Beyer-Liberto v. Fountainbleau Corp., ___ F.3d ____., 2015 WL 2116849,

at 13 (4th Cir. May 7, 2015); Ross v. Communications Satellite Corp., 759 F.2d 35, 365 (4th Cir.

985); Dwyer v. Smith, 867 F.2d 184, 190-91 (4th Cir. 1989).  A prima facie retaliation claim

under 42 U.S.C. § 1981 has the same elements. Id. Once the plaintiff has established a prima

facie case of retaliation, the burden shifts to the defendant to produce some legitimate,

nondiscriminatory reason for the adverse employment action. Texas Department of Community

Affairs v. Burdine, 450 U.S. 248, 253 (1981) (quoting McDonnell v. Green, 411 U.S. 792, 802

(1973).

    A. Plaintiff Mary Elizabeth Chambers Can Meet Her Burden of Proof For Sex
       Discrimination and Retaliation

    Plaintiff Mary Elizabeth Chambers can prove a prima facie case of employment

discrimination based on sex (female) and retaliation for her opposition to Defendant District of

Columbia's discriminatory employment practices and her participation in the filing of a charge

of employment discrimination with the EEOC against Defendant District of Columbia.  Plaintiff

Mary Elizabeth Chambers can also show that she was subjected to a hostile work environment

based on sex (female) and retaliation because she complained about the delay in the granting of

her FMLA and because she filed a complaint with the Notary Board alleging a violation of the Notary requirements after she was ordered by a management official to change a document that had been notarized.  The Notary Board ordered that all Notaries in Defendant District of Columbia's Attorney General's office receive training.

In addition, Plaintiff Mary Elizabeth Chambers can established that (a) she is a female; (b) she was qualified for transfer; (c) Defendant District of Columbia had openings in various units and allowed male employees to transfer to those units; (d) Defendant District of Columbia refused to allow Plaintiff Mary Elizabeth Chambers to transfer to those units; (e) took an adverse action against her based on her sex by continuing to refuse her requests for transfers; and (f) Defendant District of Columbia continued to transfer its male employees to other units even when they did not request a transfer. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).   Therefore, Plaintiff Mary Elizabeth Chambers has made prima facie showing of discrimination based on female (female) in this instance.

B.  Plaintiff Mary Elizabeth Chambers Experienced A Hostile Work Environment

Plaintiff Mary Elizabeth Chambers can demonstrate that she suffered an adverse action related to her allegations

C.  Plaintiff Mary Elizabeth Chambers Has Established A Prima Facie Case Of Retaliation

Plaintiff Mary Elizabeth Chambers has established that: (1) she engaged in protected activity; (2) Defendant District of Columbia's management officials were aware of her protected activity; (3) Plaintiff Mary Elizabeth Chambers was subjected to several adverse employment actions by Defendant District of Columbia; and (4) there is a nexus between the

Plaintiff Mary Elizabeth Chambers' protected activity and the adverse action taken against her. Plaintiff Mary Elizabeth Chambers has shown that there a causal nexus with the adverse action that followed her protected activity of filing a charge of employment discrimination and the charges of employment discrimination were filed within a reasonably period of time after the that action was taken against her there is a retaliatory motive inferred for the action taken by Defendant District of Columbia against Plaintiff Mary Elizabeth Chambers.  A nexus can clearly be established between Plaintiff Mary Elizabeth Chambers' prior EEO activities and the failure and refusal of Defendant District of Columbia to permit her to transfer to other units, including the issuance of a four-day suspension.  In addition, the changing of Plaintiff Mary Elizabeth Chambers' job title from a Support Enforcement Specialist to an Investigator prevents her from receiving a within grade increase and a promotion for a lengthy time period.

Plaintiff Mary Elizabeth Chambers can establish a retaliatory motive indirectly with the changing of the job title which is entirely different from a Support Enforcement Specialist position that she previously occupied.  Defendant District of Columbia's contention that Plaintiff Mary Elizabeth Chambers was not injured with the job title change is a pretext and a subterfuge unworthy of any real belief.  As stated above, when consideration is given to the stated reason given by Defendant District of Columbia for taking the adverse action against Plaintiff Mary Elizabeth Chambers – her salary did not change - and that stated reason must be dismissed because it is unworthy of any real belief, the only real reasonable and remaining explanation is that it is because of a discriminatory reason.  This so because Plaintiff Mary Elizabeth Chambers requested over 20 times for a transfer and each time the request was denied. Even though Defendant District of Columbia contend that there is no loss of salary, the evidence is clear that it was an act of retaliation because Plaintiff Mary Elizabeth Chambers will be prevented for

receiving a within grade increase or a promotion for substantial time period and Defendant

District of Columbia has failed to present sufficient evidence to support its motion for summary

judgment. Therefore, the motion for summary judgment must be denied in its entirety.

D. Plaintiff Mary Elizabeth Chambers Has Established A Prima Facie Case of Sex
   Discrimination And That Defendant District of Columbia's Stated Reasons Are
   Unworthy Of Any Real Belief And They Should Be Dismissed

In order to defeat a motion for summary judgment, the plaintiff need only present

evidence from which a jury might return a verdict in her favor. Anderson, 477 U.S. at 257. A

plaintiff need not cast doubt on each proffered [nondiscriminatory] reason [for the adverse

employment action] taken against her in a vacuum. Beyer-Liberto v. Fountainbleau Corp., ___

F.3d ____., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015). In this instance Plaintiff Mary

Elizabeth Chambers has shown that there was a hostile work environment based on sex (female)

and Plaintiff Mary Elizabeth Chambers was adversely affected by the hostile work environment.

Defendant District of Columbia has not provided any reasonable explanation for the continuous

failure and refusal to transfer Plaintiff Mary Elizabeth Chambers to the Intake Unit by

erroneously alleging that there were no available positions in that unit while transferring male

employees to various units even though they never applied for the transfers. Therefore, Plaintiff

Mary Elizabeth Chambers has made out a prima facie case of sex (female) discrimination.

Defendant District of Columbia has proffered a nondiscriminatory reason for the adverse

action of denying Plaintiff Mary Chambers the opportunity to transfer to the Intake Unit while

approving male employees transfer to various units even when they did not even request to

transfer. The burden then shifts back to the plaintiff to produce credible evidence that the reason

offered by the defendant is mere pretext for unlawful retaliation. Burdine, 450 U.S. at 253;

McDonnell Douglass, 411 U.S. at 804. It is enough if the actions complained of are materially

adverse.  Thus, a plaintiff is protected from retaliation that produces an injury or harm.

Burlington, 548 U.S. at 68.  Plaintiff Mary Elizabeth Chambers has shown that she has been

harmed by Defendant District of Columbia's retaliation of changing her job title from Support

Enforcement Specialist to Investigator, which action has prevented her from receiving a within-

grade increase because she has not been in the new Investigator job title for the required amount

of time to be considered for either a within grade increase or a promotion. See Beyer-Liberto ,

___ F.3d ____., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015); McDonnell Douglass, 411 U.S.

at 802; Swierkiewicz, 534 U.S. at 509; St. Mary's Honor Ctr., 509 U.S. at 511.  Although

Defendant District of Columbia alleges that Plaintiff Mary Elizabeth Chambers' salary is the

same her opportunity to receive a within grade increase and a promotion have been severely

affected by the change in her job title from a Support Enforcement Specialist to an Investigator.

Thus, Plaintiff Mary Elizabeth Chambers also has established a prima facie case of retaliation

because she participated in protected activity by filing a charge of employment discrimination

with the EEOC and Defendant District of Columbia knew and was provided with the charge of

employment discrimination.

Moreover, where there is evidence of pretext combined with evidence of a prima facie

case of employment discrimination based on sex (female) hostile work environment and

retaliation, a motion for summary judgment is defeated, but the evidence of pretext with the

combined evidence of a prima facie case of employment discrimination is sufficient to obtain a

judgment for the plaintiff.  Sanderson, 530 U.S. 133, 135 (2000).  In this instance, Plaintiff Mary

Elizabeth Chambers has presented a prima facie case of employment discrimination based on sex

(female) hostile work environment and retaliation, therefore Defendant District of Columbia's

motion for summary judgment is not only defeated but the evidence of pretext is sufficient to

obtain judgment for Plaintiff Mary Elizabeth Chambers. The evidence show that Defendant District of Columbia created a hostile work environment, and when Defendant District of Columbia took employment actions that were continuously adverse to Plaintiff Mary Elizabeth Chambers by continually failing and refusing to transfer her to the Intake Unit, while freely transferring male employees to units at which there were no established positions and there were no requests from the male employees. (Chambers Aff'd, p. ¶   ). The causal connection between the Plaintiff Mary Elizabeth Chambers' charge of employment to Defendant District of Columbia's continuous failure and refusal to transfer her to other units while allowing male employees to transfer freely to other units and the adverse action taken by Defendant District of Columbia to change Plaintiff Mary Elizabeth Chambers job title from Support Enforcement Specialist to an Investigator, which prevented her from receiving a promotion and a within-grade increase is clearly seen in this instance. (Chambers Aff'd, p. 8, ¶ 39). Beyer-Liberto v. Fountainbleau Corp., ___ F.3d ____., 2015 WL 2116849, at 13 (4th Cir. May 7, 2015); Ross v. Communications Satellite Corp., 759 F.2d 35, 365 (4th Cir. 985); Dwyer v. Smith, 867 F.2d 184, 190-91 (4th Cir. 1989). Therefore, Defendant District of Columbia' motion for summary judgment should be denied in its entirety and judgment should be granted to Plaintiff Mary Elizabeth Chambers. Id

Plaintiff Mary Elizabeth Chambers requests that the Court deny Defendant District of Columbia's motion for summary judgment in its entirety and enter judgment for Plaintiff Mary Elizabeth Chambers.  In the alternative, Plaintiff Mary Elizabeth Chambers requests that this Court schedule this matter for a trial, as soon as possible.

IV.        CONCLUSION AND RECOMMENDATION

WHEREFORE, in conclusion and for all of the reasons set forth above, Plaintiff Mary

Elizabeth Chambers prays that the Court deny Defendant District of Columbia's motion for

summary judgment and enter an order of judgment for Plaintiff Mary Elizabeth Chambers  on

her second amended complaint of discrimination based on sex (female), hostile work

environment and retaliation, or in the alternative that the Court order that this case proceed to

trial before a jury, and for such other further relief as justice dictates and fairness demands.

Dated this 18th day of January, 2019


                                                    _/s/ Mary Elizabeth Chambers___
                                                    Plaintiff Mary Elizabeth Chambers

Dated this 18th day of January, 2019


                                        Respectfully submitted,

                                        LAW OFFICES OF JOHNNIE LOUIS
                                        JOHNSON III LLC,

                                        By:  // Johnnie Louis Johnson III_____
                                            Johnnie Louis Johnson III (Bar No. 235614)
                                        Attorney for Plaintiff Mary Elizabeth Chambers
                                        11644 Mediterranean Court
                                        Second Level
                                        Reston, Virginia 20190-3401
                                        703.471.0848 (Voice)
                                        703.471.0478 (Facsimile)
                                        571.269.1061 (Mobile)
                                        jljmed@aol.com (Electronic Mail)
                                        johnnie@jljohnson3law.com (Electronic Mail)