# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MARY E. CHAMBERS,                         )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )        Civil Action No. 14-2032 (RBW)
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
            Defendant.                    )
_____   )

## MEMORANDUM OPINION

The plaintiff, Mary E. Chambers, brings this civil action against the defendant, the

District of Columbia (the "District"), alleging that she was unlawfully discriminated against on

the basis of her gender and retaliated against for filing a charge of discrimination against the

District with the Equal Employment Opportunity Commission ("EEOC") in 2011, in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2 to –17 (2012). See

Second Amended Complaint ("2d Am. Compl.") at 1, 8–10.[1] Currently before the Court is the

Defendant's Motion for Summary Judgment ("Def.'s Mot."). Upon careful consideration of the

parties' submissions,[2] the Court concludes for the following reasons that it must grant the

District's motion for summary judgment.

_____

[1] The plaintiff also alleges that she was subjected to a hostile work environment. See 2d Am. Compl. at 1 & ¶¶ 12, 18. However, on April 6, 2017, the Court dismissed the plaintiff's hostile work environment claim with prejudice "because the allegation of other facts consistent with the [Second Amended Complaint] could not possibly cure the [failure to exhaust administrative remedies]." Chambers v. District of Columbia, 249 F. Supp. 3d 66, 71 (D.D.C. 2017) (Walton, J.) (alterations in original) (internal quotation marks omitted). Therefore, the Court need not address the plaintiff's hostile work environment claim because, as the District notes, "th[is] claim is not part of this litigation." Memorandum of Points and Authorities in Support of the District of Columbia's Motion for Summary Judgment ("Def.'s Mem.") at 9 n.4.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the District of Columbia's Statement of Material Facts as to Which There is No Genuine Dispute

(continued . . .)

# I.    BACKGROUND

At all relevant times, the plaintiff was employed as a Support Enforcement Specialist in the Interstate Unit of the Child Support Services Division at the District's Office of the Attorney General.  <u>See</u> 2d Am. Compl. ¶ 3.  The plaintiff alleges that during her employment, the Office of the Attorney General discriminated against her based on her sex [ ], and retaliated against her because she opposed [the] District['s] . . . discriminatory employment practices" in a number of ways.  <u>Id.</u> ¶ 10.  She claims that (1) "a male co-worker, who had communication and performance issues with customers, was not disciplined, while [she] . . . was disciplined because she had filed a [prior] charge of employment discrimination with the EEOC" in August 2010, <u>id.</u>; (2) the District allegedly "permitt[ed] male employees to transfer to other departments . . . [,] but denied [the] [p]laintiff . . . the same opportunity to transfer," <u>id.</u>; (3) the District "permitt[ed] male employees to . . . receive incentive awards and special awards[,] but denied [the] [p]laintiff . . . the same opportunity . . . to receive incentive awards and special awards," <u>id.</u>; (4) the District "assigned [the] [p]laintiff . . . an excessive amount of cases compared to other employees in the unit," <u>id.</u>; (5) when she "was away from the office [on medical leave] . . . [between] October 2011 [and] February 2012[,] . . . [the] District['s] . . . Family Medical Leave Act [("FMLA")] Coordinator, Tarifah Coaxum[,] willfully delayed the processing of [the] [p]laintiff['s] . . . medical leave," <u>id.</u> ¶ 12; (6) the District "failed and refused to allow [the] [p]laintiff . . . to transfer to the other unit to alleviate the stress that she was experiencing," <u>id.</u> ¶ 13; (7) the

(. . . continued)
("Def.'s Facts"); (2) Plaintiff Mary Elizabeth Chambers'[s] Memorandum in Opposition to Defendant District of Columbia's Motion for Summary Judgment ("Pl.'s Opp'n"); (3) Plaintiff Mary Elizabeth Chambers'[s] Statement of Material Facts as to Which There is a Genuine Dispute ("Pl.'s Disputed Facts"); (4) Plaintiff Mary Elizabeth Chambers'[s] Statement of Material Facts as to Which There is No Genuine Dispute ("Pl.'s Undisputed Facts"); (5) Defendant District of Columbia's Reply Memorandum ("Def.'s Reply"); and (6) the Defendant's Response to [the] Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Resp. to Pl.'s Facts").

District "refus[ed] to authorize the performance of a desk audit for her [ ] Support Enforcement Specialist position," id. ¶ 14; and (8) the District "continued its discrimination and retaliation against her by willfully failing and refusing to properly process her pay checks." Id. ¶ 15; see also id. ¶ 16.

On March 4, 2011, the plaintiff filed a charge of discrimination with the EEOC, claiming that she was "discriminated against based on [her] sex [ ] and retaliated against." Def.'s Mot., Exhibit ("Ex.") 6 (Charge of Discrimination No. 570-2011-00598) at 1. Specifically, the plaintiff claimed that (1) a male co-worker who "had weekly communication problems and performance issues with customers" was not disciplined, but when she had a "single incident with a customer," she "was suspended for [four] days"; (2) this same male co-worker was granted a transfer to another department, while the plaintiff was "denied [a] transfer in the past"; and (3) her "caseload was taken from [her] and [she] was reassigned to another unit without being given proper training." Id., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1.

On November 20, 2014, the plaintiff initiated this civil action.[3] Complaint at 1. Thereafter, the Court granted the District's motion to dismiss "the plaintiff's claims of discrimination based on her age . . . because the plaintiff failed to exhaust her administrative remedies . . . , a deficiency that cannot be cured," Chambers v. District of Columbia (Chambers I), 249 F. Supp. 3d 66, 72 (D.D.C. 2017), but dismissed without prejudice "the plaintiff's claims of retaliation . . . because the plaintiff failed to plead a prima facie case," id. On June 23, 2017, the plaintiff filed her Second Amended Complaint, see 2d Am. Compl. at 1, and after discovery

---

[3] The plaintiff's original complaint named the District of Columbia Office of the Attorney General and Irvin Nathan, in his prior official capacity as the Attorney General of the District of Columbia, as the defendants, and was filed in the United States District Court for the District of Maryland. See Complaint at 1. After the case was transferred to this Court, the plaintiff amended her complaint and named only the District as the defendant. See Amended Complaint at 1. Although the plaintiff initially represented herself, she is now represented by counsel.

concluded on May 29, 2018, see Min. Order (Apr. 18, 2018), the District filed its motion for summary judgment, which is the subject of this Memorandum Opinion.

## II.     STANDARD OF REVIEW

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, unsupported allegations or conclusory statements are not sufficient to defeat summary judgment, see Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) ("[C]onclusory

allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted)), and the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial," <u>Anderson</u>, 477 U.S. at 256. Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a summary judgment motion; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252.

## III.    LEGAL ANALYSIS

The District argues that "summary judgment in favor of the District is appropriate[]" because (1) "[the] [p]laintiff failed to exhaust her administrative remedies," and (2) "[n]o jury could find that the District violated Title[] VII by not giving [the] [p]laintiff a lateral transfer." Def.'s Mot. at 1.[4]  In response, the plaintiff argues that "[t]here are numerous genuine material facts that are in dispute." Pl.'s Opp'n at 1. However, the plaintiff's opposition to the District's motion for summary judgment is "strikingly deficient." <u>Richardson v. D.C. Dep't of Youth</u>

---

[4] The District also argues that "[the] [p]laintiff has no factual support for her [42 U.S.C. §] 1981(a) claim." Def.'s Mot. at 1. However, although the Court previously misconstrued the plaintiff's Amended Complaint as alleging a violation of subsection (a) of § 1981 due to an oversight, <u>see Chambers I</u>, 249 F. Supp. 3d at 67 n.1, it seems that the plaintiff is not bringing a claim under subsection (a) of § 1981, but rather, "is pursuing the damages provided for by 42 U.S.C. § 1981a—a separate section of the [United States] Code that allows a complaining party to recover compensatory and punitive damages under certain circumstances against a respondent who engages in unlawful intentional discrimination," <u>Charles v. District of Columbia</u>, 164 F. Supp. 3d 98, 100 (D.D.C. 2016), <u>aff'd sub nom.</u> <u>Charles v. D.C. Dep't of Youth Rehab. Servs.</u>, 690 F. App'x 14 (D.C. Cir. 2017); <u>see Dyson v. District of Columbia</u>, 808 F. Supp. 2d 84, 88 n.5 (D.D.C. 2011) ("[The] defendant confuses [42 U.S.C. §] 1981a with 42 U.S.C. § 1981(a), which is an entirely different statute prohibiting discrimination in the making and enforcement of contracts. . . . Section 1981a, on the other hand, provides remedies for claims brought under certain sections of the Civil Rights Act of 1964, including Title VII."); <u>compare</u> 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . as is enjoyed by white citizens."), <u>with id.</u> § 1981a ("In an action brought . . . against a [defendant] who engaged in unlawful intentional discrimination[,] . . . the complaining party may recover compensatory and punitive damages."). Therefore, the Court need not address whether the plaintiff is entitled to damages under § 1981a because, as discussed later in this Memorandum Opinion, none of the plaintiff's claims alleged in the Second Amended Complaint survive summary judgment.

Rehab. Servs., 271 F. Supp. 3d 113, 116 (D.D.C. 2017).[5]  Notably, the plaintiff fails to respond

to any of the arguments advanced by the District in its motion for summary judgment, but rather

relies on factually unsupported conclusory assertions as support for her legal arguments,[6] which

are insufficient to survive summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C.

Cir. 1999) ("Because [the plaintiff's] claim [under Title VII] rest[ed] entirely upon a conclusory

representation, the district court was right to dismiss it.").[7]  Notwithstanding these deficiencies,

---

[5] Interestingly, the plaintiff in Richardson was represented by the same attorney who represents the plaintiff in this case.  See 271 F. Supp. 3d at 114.  The Court is troubled by counsel's less than ideal pattern of behavior.  Earlier this year, the Court directed that "the plaintiff's counsel show cause to the Court as to why the Court should not hold him in contempt for allegedly making false representations to the Court," Order at 2 (Jan. 9, 2019), ECF No. 57, after the plaintiff's counsel, in his request for an extension of time to respond to the District's motion for summary judgment, represented that he had "conferred with [the] [ ] District . . . and [that the] [ ] District . . . stated that it d[id] not have any objections to [the] [p]laintiff['s] . . . request," Motion to Extend Plaintiff Mary E[l]izabeth Chambers' Memorandum in Opposition to Motion for Summary Judgment Until January 19, 2019 at 2, when, in fact, he did "not reach out to [the District's counsel] . . . prior to filing" the request for an extension and the District "did not provide consent to [the] [p]laintiff's request," Response to Plaintiff's Consent Motion to Extend Deadline to File Her Opposition to Defendant'[s] Motion for Summary Judgment at 2.  Although the Court is sympathetic to the plaintiff's counsel's medical circumstances, it remains apprehensive about the explanation offered by the plaintiff's counsel in response to the Court's show cause Order, particularly in light of the exhibit that the plaintiff's counsel submits purportedly justifying his alleged misrepresentations to the Court.  Nevertheless, because these alleged misrepresentations can be attributed to a misunderstanding, the Court will discharge the plaintiff's counsel's obligations pursuant to the Court's prior show cause Order.

[6] The plaintiff's opposition is replete with unsupported conclusory statements.  See, e.g., Pl.'s Opp'n at 21 (claiming that she "has made out a prima facie case of sex (female) discrimination" because she "has shown that she is a female, that she [ ] requested and was qualified for a transfer[, and was] treated different[ly] tha[n] her m[a]le co-workers"); id. at 22 (declaring that the plaintiff not only has "presented a prima facie case of employment discrimination based on sex (female), . . . and retaliation," which, as she claims, defeats the District's motion for summary judgment, but also has presented "evidence of pretext [that] is sufficient to obtain judgment [in favor of her]"); id. at 28–29 (same); id. at 22 (stating that she "has established a prima facie case of retaliation because she participated in protected activity by filing complaints of discrimination with the EEOC and [the] District . . . knew and was provided with the charges of employment discrimination"); id. at 28 (same); id. at 24 (reiterating that she "can prove a prima facie case of employment discrimination based on sex (female) and retaliation for her opposition to [the] District['s] . . . discriminatory employment practices and her participation in the filing of a charge of employment discrimination with the EEOC against [the] District"); id. at 25 (maintaining that she "has made [a] prima facie showing of discrimination based on [sex] (female)" because she can establish that "(a) she is a female; (b) she was qualified for [a] transfer; (c) [the] District . . . had openings in various units and allowed male employees to transfer to those units; (d) [the] District . . . refused to allow [the] [p]laintiff . . . to transfer to those units; (e) took an adverse action against her based on her sex by continuing to refuse her requests for transfers; and (f) [the] District . . .  continued to transfer its male employees to other units even when they did not request a transfer").

[7] The Court notes that the plaintiff, in support of her opposition to the District's summary judgment motion, submits a twenty-page affidavit in addition to a number of depositions.  However, her proffered affidavit does not raise any genuine issue as to any material fact that defeats the District's motion for summary judgment because it either addresses claims that are not alleged in the Second Amended Complaint, see, e.g., Pl.'s Opp'n, Ex. A (Affidavit of

(continued . . .)

the Court independently reviewed the evidence currently in the record, drew "all justifiable inferences . . . in [the plaintiff's] favor" as it is required to do, <u>Anderson</u>, 477 U.S. at 255, and construed liberally the arguments set forth in the plaintiff's opposition, but nevertheless concludes that the District is entitled to judgment as a matter of law.

## A.     Exhaustion of Administrative Remedies

The District argues that the "[p]laintiff failed to exhaust her administrative remedies for discrete acts of alleged unlawful discrimination and retaliation," Def.'s Mem. at 11, and therefore, "she cannot now sue for those claims," <u>id.</u>, and "[t]he District is "entitled to judgment on [these] claim[s]," <u>id.</u> at 9.[8]  The plaintiff, without any evidentiary support, argues that she "did exhaust [her] administrative remedies," Pl.'s Opp'n, Ex. A (Affidavit of Mary Elizabeth Chambers ("Chambers Aff.")) ¶ 3; <u>see also</u> <u>id.</u> at 26 (claiming that she "has shown that . . . the

---

(. . . continued)
Mary Elizabeth Chambers ("Chambers Aff.")) ¶ 11 ("I have been threatened by two co-workers."); <u>id.</u>, Ex. A (Chambers Aff.) ¶ 61 (claiming that a co-worker "submitted one false incident report [about] me"), fails to allege facts relevant to the District's arguments as to why its entitled to summary judgment, <u>see, e.g.</u>, <u>id.</u>, Ex. A (Chambers Aff.) ¶ 58 ("[The] District . . . did not have a non-discriminatory reason for recommending my suspension because the allegations against me were false and fabricated.  Indeed, the allegations were pretextual and determined to be false."); <u>id.</u>, Ex. A (Chambers Aff.) ¶ 77 ("The evidence reflects that I was assigned and carried more cases that my co-workers.  This evidence along with the evidence regarding the discriminatory treatment I have receive would indeed be more than enough for a reasonable jury to believe that CSSD did assign me more cases than my co-workers."), or, similar to her opposition, contains "conclusory allegations unsupported by factual data," <u>see, e.g.</u>, <u>id.</u>, Ex. A (Chambers Aff.) ¶ 16 ("I disagree that no jury would find that [the] District . . . otherwise retaliated against me."); <u>id.</u>, Ex. A (Chambers Aff.) ¶ 3 ("I did exhaust my administrative remedies.  Therefore, [the] District['s] . . . allegation that I did not exhaust my administrative remedies is false and unworthy of any real belief."); <u>id.</u>, Ex. A (Chambers Aff.) ¶ 43 ("I did exhaust my administrative remedies not in the format the OAG was looking for."), which do "not create a triable issue of fact," <u>Pub. Citizen Health Research Group</u>, 185 F.3d at 908.  Instead, the plaintiff's affidavit is more akin to a "self-serving affidavit[]" that "alone will not protect the non-moving party from summary judgment." <u>Carter v. George Wash. Univ.</u>, 180 F. Supp. 2d 97, 111 (D.D.C. 2001), <u>aff'd</u>, 387 F.3d 872 (D.C. Cir. 2004); <u>see also</u> <u>Arrington v. United States</u>, 473 F.3d 329, 343 (D.C. Cir. 2006) (stating that "summary judgment 'is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury" (citation omitted)).

[8] The District also argues that that "[n]o jury could find that the District otherwise retaliated against [the] [p]laintiff for filing the March 2011 Complaint of Discrimination," and "[n]o jury could find that the proposed suspension of [the] [p]laintiff violated Title VII." Def.'s Mot. at 1.  However, the Court need not address either argument because the Court, for the reasons set forth later in this Memorandum Opinion, <u>see</u> Part III, <u>infra</u>, concludes that the plaintiff has timely exhausted her administrative remedies as to only one of the claims alleged in the Second Amended Complaint, specifically the claim that the District allegedly denied the plaintiff's request for a transfer.

charges of employment discrimination were filed within a reasonably period of time after the [ ] action was taken against her"), and in furtherance of her argument, states that she, "[i]n fact, . . . filed a charge of employment discrimination," id., Ex. A (Chambers Aff.) ¶ 3. However, contrary to the plaintiff's argument that the District does not dispute that she indeed filed a charge of discrimination, the District argues that the plaintiff either failed to exhaust her administrative remedies as to certain claims by failing to include it in her charge of discrimination or failed to timely file her charge of discrimination within the requisite filing period, see Def.'s Mem. 8–11. And, based on the evidence currently in the record, the Court agrees with the District and finds that the only allegation in the Second Amended Complaint for which the plaintiff has timely exhausted her administrative remedies is that the District denied the plaintiff a transfer.[9]

This Circuit has made clear that "Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'" Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations in original) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)). To exhaust her administrative remedies, a plaintiff is required to "file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice," Lattisaw v. District of Columbia, 118 F. Supp. 3d 142, 154 (D.D.C. 2015), unless she "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case she must file a charge within 300 days, see 42 U.S.C. § 2000e–5(e)(1). However, regardless of whether an aggrieved party initially instituted proceedings with a State or local agency, the 300-day filing period applies "where a worksharing agreement exists between the EEOC and a local fair employment practices agency." Carter v.

---

[9] The District does not contest that the plaintiff has timely exhausted her administrative remedies with respect to this claim.

George Wash. Univ., 387 F.3d 872, 877, 879 (D.C. Cir. 2004) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A)); cf. 42 U.S.C. § 2000e–8(b) (authorizing the EEOC to "cooperate" and "enter into written agreements" with the State or local agency "charged with the administration of . . . employment practices law"). Therefore, because "the EEOC has entered into [a] worksharing agreement[] with . . . the [District's Office of Human Rights ("DCOHR")]," Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1372 (D.C. Cir. 2008); see Carter, 387 F.3d at 879, "[i]n the District of Columbia, a plaintiff has 300 days to file a charge with the EEOC," Proctor v. District of Columbia, 74 F. Supp. 3d 436, 455 (D.D.C. 2014) (citing Carter, 387 F.3d at 879); see Craig v. District of Columbia, 74 F. Supp. 3d 349, 361 (D.D.C. 2014) ("Ordinarily, . . . a plaintiff alleging a violation of Title VII must file an EEOC charge within 180 days of the date that the allegedly discriminatory act occurred[;] [i]n the District of Columbia . . . a 'worksharing agreement' between the EEOC and the [DCOHR] results in the automatic cross-filing of an EEOC complaint with the [DCOHR], thereby extending the filing deadline for plaintiffs in the District to 300 days." (citing 42 U.S.C. § 2000e–5(e)(1) and Carter, 387 F.3d at 879)); Slate v. Pub. Def. Serv. for the D.C., 31 F. Supp. 3d 277, 294–95 (D.D.C. 2014) (same); Cruz-Packer v. District of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) ("Under a formal work-sharing agreement, filing a formal charge with the EEOC satisfies any requirement to file a formal charge with the District's OHR, and vice-versa.").

The Court recognizes that other members of this Court have interpreted 42 U.S.C. § 2000e–5(e)(1) to require that a plaintiff, in the District of Columbia, first initiate a proceeding with the DCOHR regardless of the existence of a worksharing agreement, and have thus declined to apply the 300-day limitations period in cases where the plaintiff, rather than filing a charge with the DCOHR, had her claim automatically cross-filed with the DCOHR by having initiated

proceedings only with the EEOC.  See Epps v. Potomac Elec. Power Co., Civ. Action No. 18-1423 (CKK), 2019 WL 2423712, at *4 (D.D.C. June 10, 2019) (finding that the plaintiff may not "take advantage of the 300-day limitations period simply by having a claim automatically cross-filed with a state or local agency" (collecting cases)); Ashraf-Hassan v. Embassy of Fr. in the U.S., 878 F. Supp. 2d 164, 170–71 (D.D.C. 2012) (concluding that the plaintiff must "pursue her grievances through the state's administrative processes" to "invoke the longer presentment window" or otherwise "must file her claims within the 180-day window to be timely"); Bowers v. District of Columbia, 883 F. Supp. 2d 1, 7 (D.D.C. 2011) ("Although plaintiff's EEO charge lists the local agency, the [DCOHR] as the 'State or local Agency,' nothing indicates that plaintiff initially filed her claim with [DCOHR], a prerequisite to qualifying for the 300-day window instead of the 180-day window.").[10]  However, this Court finds the reasoning of those cases to be incompatible with this Circuit's opinion in Carter, which held that the plaintiff—who had filed a charge with only the EEOC, and not the DCOHR, before suing in federal court—"had

---

[10] In rendering their decisions regarding the applicability of the 300-day period, the courts in Epps and Ashraf-Hassan relied on Simpkins v. Washington Metropolitan Area Transit Authority, see Epps, 2019 WL 2423712, at *4 (citing Simpkins v. Wash. Metro. Area Transit Auth., No. 96-7188, 1997 WL 702349, at *3 (D.C. Cir. Oct. 10, 1997)); Ashraf-Hassan, 878 F. Supp. 2d at 171 (same), an unpublished opinion without precedential value, see F.V. Vit. Rs. 32.1(b)(1)(A), 36(e)(2).  In Simpkins, this Circuit found that "[b]y its terms, Title VII grants a 300-day filing period only when the would-be plaintiff "has initially instituted proceedings with a State or local agency," and "h[e]ld that because [the plaintiff] never filed a complaint with the DCOHR, nor has she alleged a work[-]sharing agreement between the DCOHR and the EEOC such that her EEOC filing satisfied the local filing requirement, she had only 180 days within which to file charges with the EEOC."  1997 WL 702349, at *3.  In its reasoning, the Circuit relied on Mohasco Corp. v. Silver, in which "[t]he Supreme Court [ ] explained that the purpose of the longer filing period in 'deferral states' (i.e., those with a local agency empowered to address discrimination) is 'to prevent forfeiture of a complainant's federal rights while participating in state proceedings,'" to conclude that "[i]f the complainant is not participating in a state proceeding, then there is no reason to extend the 180-day filing period." Id. (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 821 (1980)); see also id. (stating that "[t]o allow a Title VII litigant the benefit of the extended limitations period merely because she fortuitously works in a deferral state would ignore the plain language of the statute and its legislative purpose" (quoting Kocian v. Getty Ref. & Mktg. Co., 707 F.2d 748, 751 (3d Cir. 1983)).

up to 300 days to file with the [EEOC]."  387 F.3d at 879.  Accordingly, the Court finds that a

plaintiff, in the District of Columbia, has 300 days to file a charge with the EEOC.[11]

Moreover, "[e]ach incident of discrimination and each retaliatory adverse employment

decision constitutes a separate actionable 'unlawful employment practice'" and "starts a new

clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,

113–14 (2002).  Thus "[t]o be actionable, a discrete act—an event that takes place at a particular

point in time—must occur within the filing period," Dickens v. Dep't of Consumer & Regulatory

Affairs, 298 F. App'x. 2, 3 (D.C. Cir. 2008) (internal quotation marks omitted), and "discrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges," Morgan, 536 U.S. at 113.

Here, as the District correctly argues, "[t]he Second Amended Complaint includes several

allegations [of discrimination and retaliation] that are not in the [plaintiff's] [charge of

discrimination]."  Def.'s Mem. at 9.  In her charge of discrimination, the plaintiff asserted that

(1) a male co-worker who "had weekly communication problems and performance issues with

customers" was not disciplined, but when she had a "single incident with a customer," she "was

suspended for [four] days," and (2) this same male co-worker was granted a transfer to another

department, while the plaintiff and a female co-worker were denied transfers."  Def.'s Mot., Ex.

---

[11] The Court notes that this conclusion does not affect its prior decision that "the plaintiff's age discrimination and hostile work environment claims must be dismissed."  Chambers I, 249 F. Supp. at 71.  Although the Court stated that these claims must be dismissed "because the plaintiff did not file a charge of discrimination alleging age discrimination and a hostile work environment within 180 days of the alleged discriminatory incident," id. at 70 (emphasis added), whether the plaintiff filed her charge within a specified period (either 180 or 300 days) was not at issue; rather, the determinative factor in dismissing the plaintiff's age discrimination and hostile work environment claims was that her "charge not only lack[ed] the words 'hostile work environment' [and 'age discrimination,'] but also lack[ed] any factual allegations supporting such [ ] claim[s]," id. (second, fourth, and fifth alterations in original).

6 (Charge of Discrimination No. 570-2011-00598) at 1.[12]   On the other hand, the plaintiff, in her Second Amended Complaint, alleges that the District "discriminated against her based on her sex [ ], and retaliated against her because she opposed [the] District['s] . . . discriminatory employment practices" by (1) disciplining her, see 2d Am. Compl. ¶ 10 (alleging that "a male co-worker, who had communication and performance issues with customers, was not disciplined, while [she] . . . was disciplined because she had filed a charge of employment discrimination"); see also Pl.'s Opp'n at 2 (claiming that the District discriminated against her when it "subjected [her] to discipline that was more harsh than similarly situated males who committed similar infractions or greater infractions"); (2) "permitting male employees to transfer to other departments . . . [,] but den[ying] [the] [p]laintiff . . . the same opportunity to transfer to other units," id.; (3) "permitting male employees to transfer to . . . receive incentive awards and special awards . . . [,] but den[ying] [the] [p]laintiff . . . the same opportunity . . . to receive incentive awards and special awards," 2d Am. Compl. ¶ 10; (4) "assign[ing] [the] [p]laintiff . . . an excessive amount of cases compared to other employees in the unit," id.; (5) "delay[ing] the processing of [the] [p]laintiff['s] . . . medical leave," id. ¶ 12; (6) "fail[ing] to allow [the] [p]laintiff . . . to transfer to [ ] [an]other unit . . . to accommodate [the] [p]laintiff['s] . . . stress related illnesses," id. ¶ 13; (7) "refus[ing] to authorize the performance of a desk audit for her [ ] Support Enforcement Specialist position," id. ¶ 14; and (8) "refusing to properly process her pay checks," id. ¶ 15; see also id. ¶ 16 (alleging that the District "refus[ed] to properly process her pay check for the pay period of March 24, 2014"); Pl.'s Opp'n at 2 (claiming that the District

---

[12] The plaintiff's charge of discrimination also includes the contention that the plaintiff's "caseload was taken from [her] and [she] was reassigned to another unit without being given proper training." Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1.  However, the plaintiff, in her Second Amended Complaint, does not allege that she was discriminated against on this basis.  Therefore, the Court need not consider this contention.

discriminated against her when it "delayed [ ] the misprocessing of her paychecks").[13] The only two claims that the plaintiff alleges in the Second Amended Complaint that she also included in her charge of discrimination are her allegations regarding the District's disciplining her[14] and denying her the opportunity to transfer. <u>Compare</u> Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1, <u>with</u> 2d Am. Compl. ¶¶ 10–16. Therefore, the Court concludes that the plaintiff did not exhaust her administrative remedies with respect to the remaining acts that form the basis for her sex discrimination and retaliation claims.

The Court also agrees with the District that the plaintiff did not timely exhaust her administrative remedies under Title VII with respect to her claim that the District discriminated and retaliated against her when she "was suspended for [four] days," Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1; <u>see also</u> Def.'s Mem. at 10, despite including it in her charge of discrimination, <u>see</u> Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1.[15] To be actionable in this Court, the plaintiff must have filed her charge within 300

---

[13] In her opposition, the plaintiff claims that the District discriminated against her when it "denied an audit of her time and attendance sheets," and "denied [her] the opportunity to receive donated time from her coworkers." Pl.'s Opp'n at 2. However, nowhere in her Second Amended Complaint does the plaintiff allege that the District denied her an audit of her time and attendance sheets or an opportunity to receive donated time. <u>See generally</u> 2d Am. Compl. Therefore, these claims—raised for the first time in an opposition to a motion for summary judgment—are not properly before the Court. <u>See</u> <u>McKinney v. United States</u>, 75 F. Supp. 3d 266, 279 (D.D.C. 2014). And, in any event, even if the Court were to consider these additional claims, the Court concludes that the plaintiff has failed to exhaust her administrative remedies with respect to these claims as well for the same reasons that the Court concludes that the plaintiff failed to exhaust her administrative remedies as to her remaining claims.

[14] The Court, drawing "all justifiable inferences . . . in [the plaintiff's] favor" as it is required to do, <u>Anderson</u>, 477 U.S. at 255, construes the plaintiff's contention in her charge of discrimination that she "was suspended for [four] days" when she had a "single incident with a customer," Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1, to constitute the "discipline" that the plaintiff alleges in her Second Amended Complaint, <u>see</u> 2d Am. Compl. ¶ 10 (alleging that "a male co-worker, who had communication and performance issues with customers, was not disciplined, while [she] . . . was disciplined because she had filed a charge of employment discrimination with the EEOC"), in light of the plaintiff's statement that she was suspended and disciplined despite a male co-worker who "had weekly communication problems and performance issues with customers" was not. <u>See</u> Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1; 2d Am. Compl. ¶ 10.

[15] The Court notes that the plaintiff's claims are untimely regardless of whether the applicable filing period is 180 days or 300 days because even assuming that the applicable time limitation for filing a charge of discrimination was

(continued . . .)

days of May 6, 2010, the date on which the plaintiff received the Advanced Written Notice of Proposed Suspension.  See Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1; see also Gordon v. Office of the Architect of the Capitol, 928 F. Supp. 2d 196, 204 (D.D.C. 2013) (holding that Title VII's notification rule directs that "the limitations period begins to run on the date" that a given employment decision is "made and communicated to [the employee]"); cf. Powell v. Castaneda, 390 F. Supp. 2d 1, 9 (D.D.C. 2005) (calculating the start of the statute of limitations when the plaintiff received the notice of proposed removal).  Therefore, as the District correctly notes, the "[p]laintiff had until March 2, 2011 to file a claim with the EEOC." Def.'s Mem. at 10.  However, the plaintiff did not file her charge of discrimination until March 4, 2011.  See Def.'s Mot., Ex. 6 (Charge of Discrimination No. 570-2011-00598) at 1.  The plaintiff argues that the District's "allegation that [she] did not exhaust [her] administrative remedies is false and unworthy of any real belief," Pl.'s Opp'n, Ex. A (Chambers Aff.) ¶ 3, but she fails to providing any evidence that supports her exhaustion argument.  And, she does not claim, nor can the Court discern, that any applicable equitable exception should apply to excuse her failure to timely exhaust her administrative remedies.  See generally Pl.'s Opp'n. Accordingly, the Court agrees with the District that the plaintiff "failed to file her claim within the requisite time frame," Def.'s Mem. at 10, and concludes that summary judgment must be entered in favor of the District with respect to the plaintiff's claim regarding the alleged four-day suspension as well.[16]

---

(. . . continued)
300 days, the filing of the plaintiff's charge of discrimination on March 4, 2011, fell beyond the 300-day period, albeit by two days.

[16] Even if the plaintiff's claim that the District discriminated against her when it suspended her for four days had been timely exhausted, because the plaintiff "complain[s] about a proposed [suspension] that never materialized and never 'affect[ed] the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm[,]' [i]t follows that the proposed [suspension] was not

(continued . . .)

**B.      The Plaintiff's Claim of Discrimination and Retaliation Based on Transfer Denials**

The District also argues that the "[p]laintiff cannot show that denying her request for a transfer . . . was a prohibited personnel action," id. at 11, because there is no evidence that the District's failure to transfer the plaintiff either "constituted an adverse action for purposes of her discrimination claim," id. at 13, or "was an adverse personnel action to support her retaliation claim," id.  The plaintiff claims that she can establish that the District "took an adverse action against her based on her sex by continuing to refuse her requests for transfers," Pl.'s Opp'n at 25; see also id. at 25 (maintaining that she "was subjected to several adverse employment actions by [the] District"); id. at 22–23 (stating that the District "took employment actions that were continuously adverse to [her] by refusing to transfer her to her requested unit in which [she] could properly perform her assignments"); id. at 27, 29 (same, with the exception that the District allegedly "continually fail[ed] and refus[ed] to transfer her to the Intake Unit").  For the following reasons, the Court concludes that the District is entitled to summary judgment on the plaintiff's claim that the District allegedly discriminated and retaliated against her by denying her the opportunity to transfer.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any [employee] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin."  42

---

(. . . continued)
materially adverse for discrimination purposes."  Saunders v. Mills, 172 F. Supp. 3d 74, 97 (D.D.C. 2016) (third alteration in original) (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)); see Pl.'s Opp'n at 8 ("[T]he suspension was rescinded by an arbitrator."); Def.'s Mem. at 20 ("The arbitrator . . . found that [the District] failed to meet it[s] burden[,] . . . [and] [c]onsequently, [the District] was prohibited from imposing the four-day suspension."); Def.'s Mot., Ex. 5 (Opinion and Award of Barbara B. Franklin, Arbitrator) (vacating the four-day suspension after finding that it was unwarranted because there was insufficient evidence to support the claims against the plaintiff); see also Tyson v. Brennan, No. 18-5033, 2018 WL 5927921, at *1 (D.C. Cir. Nov. 7, 2018) ("[A] suspension that is proposed but not actually served by the employee does not constitute an adverse employment action."); Baloch v. Kempthorne, 550 F.3d 1191, 1198 n.4, 1199 (D.C. Cir. 2008) (declining "to find adverse actions where the suspension is not actually served").

U.S.C. § 2000e–2(a)(1).  To state a prima facie case of discrimination under Title VII, a plaintiff

must establish "that (1) [s]he is a member of a protected class, (2) [s]he suffered an <u>adverse</u>

<u>employment action</u>, and (3) the unfavorable action gives rise to an inference of discrimination

(that is, an inference that [her] employer took the action because of his membership in the

protected class)."  <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (emphasis added)

(citing <u>Brown v. Brody</u>, 199 F.3d 446, 452 (D.C. Cir. 1999)); <u>see also</u> <u>Swierkiewicz v. Sorema</u>

<u>N.A.</u>, 534 U.S. 506, 510 (2002).   It is also unlawful under Title VII for an employer to retaliate

against an employee who either "has opposed any practice made an unlawful employment

practice by [Title VII], or . . . [having] made a charge . . . under [Title VII]."  42 U.S.C. § 2000e–

3(a).  To establish a <u>prima facie</u> case of retaliation, a plaintiff must show "(1) that [s]he engaged

in [a] statutorily protected activity; (2) that [s]he suffered a <u>materially adverse action</u> by h[er]

employer; and (3) that a causal link connects the two."  <u>Jones v. Bernanke</u>, 557 F.3d 670, 677

(D.C. Cir. 2009) (emphasis added); <u>see also</u> <u>Hamilton v. Geithner</u>, 666 F.3d 1344, 1357 (D.C.

Cir. 2012).

In the absence of direct evidence of an alleged unlawful employment action, as is the

situation here, claims of discrimination and retaliation arising under Title VII are analyzed under

the three-part framework of <u>McDonnell Douglas Corp. v. Green</u>.  <u>See</u> <u>Jackson v. Gonzales</u>, 496

F.3d 703, 706 (D.C. Cir. 2007) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–

05 (1973)); <u>Morgan v. Fed. Home Loan Mortg. Corp.</u>, 328 F.3d 647, 651 (D.C. Cir. 2003)

(applying the <u>McDonnell Douglas</u> framework to a Title VII retaliation claim).   Under this

framework, the plaintiff bears the initial burden of establishing her prima facie case of

discrimination and retaliation.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Vickers v. Powell</u>, 493

F.3d 186, 194 (D.C. Cir. 2007).  If the plaintiff establishes a prima facie case, "[t]he burden then

must shift to the employer to articulate some legitimate, nondiscriminatory [or non-retaliatory] reason for" its actions. McDonnell Douglas, 411 U.S. at 802; see Vickers, 493 F.3d at 194. Once the employer offers a legitimate, nondiscriminatory justification for its action, "the McDonnell Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination [or retaliation] vel non." Jackson, 496 F.3d at 707 (citation and internal quotation marks omitted); see Vickers, 493 F.3d at 194. After the employer makes such a showing, "the plaintiff must prove that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives." Jackson, 496 F.3d at 707 (citations omitted). However, this Circuit has clarified that

> [i]n a Title VII disparate-treatment suit where an employee has suffered an adverse [ ] action and an employer has asserted a legitimate, non-discriminatory [or non-retaliatory] reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas. Rather, . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of . . . sex[.]

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008); see Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (applying the Brady framework in the context of a gender discrimination and retaliation case). However, while an employee need not establish a prima facie of discrimination or retaliation at the summary judgment stage, she must still, at a minimum, demonstrate that she suffered an adverse employment action. See Brady, 520 F.3d at 493; see also Dorns v. Geithner, 692 F. Supp. 2d 119, 131 (D.D.C. 2010) (Walton, J.) ("Title VII . . . requires that plaintiff suffered some adverse employment action."); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 102 (D.D.C. 2005) ("[T]he necessary threshold element for any Title VII discrimination claim [is] an adverse employment action.").

The standard for what constitutes an adverse action differs under Title VII's anti-discrimination and anti-retaliation provisions.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  Title VII's anti-discrimination provision protects an individual only from employment-related discrimination, and a plaintiff claiming that she was discriminated against must prove that she "suffered an adverse employment action."  Forkkio, 306 F.3d at 1130 (emphasis added).  "[A]n adverse employment action [is] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (emphasis added) (citations omitted).  A plaintiff will be found to have suffered "an adverse employment action if [s]he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Forkkio, 306 F.3d at 1131 (emphasis added) (citing Brown, 199 F.3d at 457); see also Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("An employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."); Ames v. Nielsen, 286 F. Supp. 3d 70, 83 (D.D.C. 2017) ("[E]mployment actions that do not obviously cause a significant change in employment status—such as a decision causing a significant change in benefits—require the plaintiff to 'go the further step' of demonstrating how the decision caused objectively tangible harm." (quoting Douglas, 559 F.3d at 553)).

On the other hand, "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim," Baloch v. Kempthorne, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008), such that they "need not be employment-related or even occur

in the workplace, nor must they result in a materially adverse change <u>in the terms or conditions</u> <u>of [one's] employment</u>," <u>Nurriddin v. Bolden</u>, 40 F. Supp. 3d 104, 116 (D.D.C. 2014) (emphasis added) (alteration in original) (citation and internal quotation marks omitted); <u>see also</u> <u>Gardner v.</u> <u>District of Columbia</u>, 448 F. Supp. 2d 70, 76 (D.D.C. 2006) (explaining that, under Title VII's anti-retaliation provision, "[a]dverse actions can include actions that do not adversely affect promotion opportunities or that do not create tangible, economic loss").  "Nonetheless, the alleged retaliatory action must produce an injury or harm" in order to be actionable, and that "injury or harm must be material, meaning that it could dissuade[] a reasonable worker from making or supporting a charge of discrimination."  <u>Nurriddin</u>, 40 F. Supp. 3d at 116 (alteration in original) (internal citations and quotation marks omitted); <u>see also</u> <u>Burlington N.</u>, 548 U.S. at 67 ("The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").  However, for example, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Burlington N.</u>, 548 U.S. at 68 (citation omitted).

The denial of "a transfer involving no diminution in pay and benefits," i.e., a lateral transfer, does not rise to the level of an adverse action "unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of [an employee's] employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."  <u>Brown v. Brody</u>, 199 F.3d 446, 457 (D.C. Cir. 1999); <u>see also</u> <u>Geleta v. Gray</u>, 645 F.3d 408, 411 (D.C. Cir. 2011).  For example, a reassignment of duties may be materially adverse if it places the employee in a position with "significantly different—and diminished—supervisory and programmatic

responsibilities," <u>Czekalski v. Peters</u>, 475 F.3d 360, 364 (D.C. Cir. 2007), or "fewer

opportunities for compensation and advancement," <u>Caudle v. District of Columbia</u>, 804 F. Supp.

2d 32, 43 (D.D.C. 2011).

Here, the Court finds that the plaintiff has failed to show that a genuine issue of material

fact exists as to whether she suffered an adverse action under Title VII's anti-discrimination or

anti-retaliation provisions as a result of the District's denial of her request to be transferred. The

plaintiff disputes the District's contention that "[t]here is also no evidence that [the] [p]laintiff

suffered a loss in pay," Def.'s Mem. at 13; <u>see</u> Pl.'s Opp'n at 26, and argues that "the evidence is

clear" that "she has been harmed . . . because she has been prevented from receiving a promotion

as a Support Enforcement Specialist and will now be delayed in receiving a within grade

increase," Pl.'s Opp'n at 22, 26. However, she has neither produced nor cited a single piece of

evidence supporting her positions. In fact, the record is completely devoid of evidence from

which a reasonable juror could conclude that she suffered any harm, let alone any material

adverse consequences that "affect[ed] the terms, conditions, or privileges of employment or

future employment opportunities such that a reasonable trier of fact could find objectively

tangible harm." <u>Forkkio</u>, 306 F.3d at 1131 (citations omitted). And, because "the necessary

threshold element for any Title VII discrimination [or retaliation] claim [is] an adverse [ ]

action," <u>Nurriddin</u>, 382 F. Supp. 2d at 102, the plaintiff's unsupported conclusory arguments are

insufficient to satisfy her burden of showing that she suffered an adverse action, and her failure

to establish the requisite material adversity is fatal to her discrimination and retaliation claims,

<u>see</u> <u>Brady</u>, 520 F.3d at 493. Accordingly, the Court concludes that the District's denial of the

plaintiff's transfer request does not constitute an adverse action either under Title VII's anti-

discrimination or anti-retaliation provisions and therefore finds that the District is entitled to

summary judgment on the plaintiff's claim that she was subjected to discrimination and retaliation when the District denied her a transfer.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that, with the exception of her claim that the District discriminated and retaliated against her by denying her a lateral transfer, the plaintiff failed to timely exhaust her administrative remedies by either not including all of the claims alleged in her Second Amended Complaint in her charge of discrimination filed with the EEOC or not timely filing the charge of discrimination within the requisite 300-day period.  The Court further concludes that the plaintiff failed to establish that she suffered harm as a result of the District's alleged denial of a transfer.  Accordingly, the Court concludes that the District's summary judgment motion must be granted.

**SO ORDERED** this 24th day of July, 2019.[17]

REGGIE B. WALTON
United States District Judge

---

[17] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.