UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| MARY E. CHAMBERS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-2032 (RBW) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

The plaintiff, Mary E. Chambers, brings this civil action against the defendant, the District of Columbia Office of Attorney General (the "District" or "the defendant"), alleging discrimination on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 to -17 (2012).[1] See Second Amended Complaint ("2d Am. Compl.") at 3, ¶¶ 9–10, ECF No. 16.  Currently pending before the Court is the District's motion for summary judgment.  See Defendant District of Columbia's Memorandum in Response to Plaintiff's Supplemental Brief ("Def.'s Resp."), ECF No. 83.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's motion for summary judgment.

---

[1] The plaintiff also asserted a claim of discrimination on the basis of her age, retaliation for filing a charge of discrimination, and of a hostile work environment.  See 2d Am. Compl.  However, both this Court and the District of Columbia Circuit rejected these claims.  See Chambers v. District of Columbia, 35 F.4th 870, 882 (D.C. Cir. 2022); Chambers v. District of Columbia, 249 F. Supp. 3d 66, 71 (D.D.C. 2017) (Walton, J.).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 51; (2) the District of Columbia's Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Facts"), ECF No. 60-1; (3) Plaintiff Mary Elizabeth Chambers' Memorandum in Opposition to Defendant District of Columbia's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 58; (4) Plaintiff Mary Elizabeth Chambers' Statement of Material Facts as to Which There is No Genuine Dispute ("Pl.'s Facts"), ECF No. 58-4;  (5) the Defendant District of Columbia's Reply Memorandum ("Def.'s Reply"), ECF No. 60; and (6) the Plaintiff's Supplemental Brief ("Pl.'s Supp. Br."), ECF No. 80.

1

I.     BACKGROUND

In addition to the facts referenced by the Circuit in its opinion in this case, Chambers v. District of Columbia, 35 F.4th 870 (D.C. Cir. 2022), this Court previously set forth the factual background of this case in two prior Memorandum Opinions issued (1) on April 6, 2017, see Chambers v. District of Columbia, 249 F. Supp. 3d 66, 68–69 (D.D.C. 2017), and (2) on July 24, 2019, see Chambers v. District of Columbia, 389 F. Supp. 3d 77, 81–82 (D.D.C. 2019), and therefore, need not reiterate every fact contained in those opinions here.  The Court will, however, set forth the relevant facts still at issue, as well as the procedural background of this case, which remains pertinent to the resolution of the pending motion.

The plaintiff "worked in the District of Columbia's Office of the Attorney General for more than twenty years before this litigation, first as a clerk and later as a Support Enforcement Specialist and investigator."  Chambers, 35 F.4th at 873; see also Plaintiff Mary Elizabeth Chambers' Statement of Material Facts as to Which There is No Genuine Dispute ("Pl.'s Facts") at 1, ¶¶ 1–2, ECF No. 58-4; Defendant's Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts") at 3, ¶¶ 1–2, ECF No. 60-1.  The plaintiff "requested, on multiple occasions, a transfer to a Paralegal Specialist position within the Legal Unit, which were all denied."  Supplemental Brief ("Pl.'s Supp. Br.") at 3, ECF No. 80.  Early in 2011, the plaintiff filed "a charge of employment discrimination with the [Equal Employment Opportunity Commission ("EEOC")] alleging sex discrimination and retaliation because a male co-worker was granted a transfer to another Unit, but she and another female co-worker were denied such a transfer."  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 4, ECF No. 58; see also Pl.'s Facts ¶ 6; Defendant's

Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Reply Facts") at 3, ¶ 6, ECF No. 60-1.

Consequently, not having received the relief she sought from the defendant, on November 20, 2014, the plaintiff filed this civil action. See Complaint ("Compl."), ECF No. 1. In response, the defendant filed a motion for summary judgment on September 25, 2018. See Memorandum of Points and Authorities in Support of the District of Columbia's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 51. After briefing concluded, the Court issued a memorandum opinion granting the defendant's motion for summary judgment "on the plaintiff's claim that the District allegedly discriminated and retaliated against her by denying her the opportunity to transfer." Chambers, 389 F. Supp. 3d at 90–91.

Following this Court's grant of summary judgment, the plaintiff appealed the ruling to the Circuit on August 21, 2019. See Notice of Appeal, ECF No. 65. The Circuit affirmed this Court's dismissal of the plaintiff's retaliation claim, see Order 19-7098 (D.C. Cir. 2022), ECF No. 67-1, but the en banc court reversed this Court's dismissal of the plaintiff's discrimination claim and a Circuit panel's affirmance of the dismissal, concluding that its ruling in Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999), "that the denial or forced acceptance of a job transfer is actionable under Title VII of the Civil Rights Act of 1964 only if the employee suffered 'objectively tangible harm[,]'" Chambers, 35 F.4th at 872 (quoting Brown, 199 F.3d at 457), was "inconsistent with Title VII and . . . intervening Supreme Court authority[,]" id. Accordingly, the en banc court held "that an employer that transfers an employee or denies an employee's transfer request because of the employee's race, color, religion, sex, or national origin violates Title VII by discriminating against the employee with respect to the terms, conditions, or privileges of employment." Id. In other words, the Court concluded that "[o]nce it has been

established that an employer has discriminated against an employee with respect to that employee's terms, conditions, or privileges of employment because of a protected characteristic, the analysis is complete. The plain text of Title VII requires no more." Id. at 874–75 (internal quotation marks omitted).[3]

Having overruled Brown, the Circuit remanded the case to this Court for further proceedings on the plaintiff's sex discrimination claim. Following the remand and with the Court's authorization, the plaintiff filed a supplemental brief in opposition to the defendant's summary judgment motion, see generally Pl.'s Supp. Br., and in response, the defendant filed its own supplemental memorandum in support of its motion, see generally Def.'s Resp. In her supplemental brief, the plaintiff contends that the defendant's "actions of (1) granting male colleagues transfers to other units, despite performance issues, while simultaneously denying [the p]laintiff's transfers to the similar units; (2) selective discipline for alleged work incidents; and (3) denial of proper training[,] are all indic[a]tive of discriminatory treatment." Pl.'s Supp. Br. at 6. The defendant maintains that the "Court should grant the District's motion for summary judgment because [the p]laintiff has offered no evidence that the transfer denial was based on her sex." Def.'s Resp. at 1.

---

[3] Subsequent decisions issued by other members of this Court have applied the standard adopted in Chambers. See, e.g., Yazzie v. Nat'l Org. for Women, No. 19-cv-3845 (RDM), 2024 WL 230244, at *10 (D.D.C. Jan. 22, 2024) ("[A]ll that is now required is discrimination with respect to an employee's 'terms, conditions, or privileges of employment[.]'") (quoting 42 U.S.C. § 2000e-2(a)(1)); Keith v. U.S. Gov't Accountability Off., No. 21-cv-2010 (RC), 2023 WL 6276635, at *4 (D.D.C. Sept. 26, 2023) ("[A]ll that is required is that the plaintiff allege 'that an employer has discriminated against an employee with respect to that employee's terms, conditions, or privileges of employment.'") (quoting Chambers, 35 F.4th at 874–75) (internal quotation marks omitted); Bain v. Off. of Att'y Gen., 648 F. Supp. 3d 19, 51 (D.D.C. Dec. 23, 2022) ("[A] plaintiff need not allege that she suffered an 'objectively tangible harm' in order to state a claim; rather, the statutory text requires only discrimination with respect to an employee's 'terms, conditions, or privileges of employment'—no more and no less.") (quoting Chambers, 35 F.4th at 872, 874–75); Liu v. Georgetown Univ., No. 22-cv-157 (RDM), 2022 WL 2452611, at *7 (D.D.C. July 6, 2022) (finding that the inhibition of an employee's potential for career advancement to be a relevant part of the Chambers analysis).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must "be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Although the movant carries the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The non-movant has met [her] burden of showing that a dispute about a material fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]'" Stoupakis v. Bros. Gourmet Coffees, Inc., 165 F.R.D. 5, 7 (D.D.C. 1996) (quoting Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir.1987)) (per curiam) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

5

### III.   ANALYSIS

The plaintiff relies primarily on comparator evidence as support for her sex discrimination claim, and in response the defendant argues that "[the p]laintiff has not provided any evidence of pretext[,]" Memorandum of Points and Authorities in Support of The District of Columbia's Motion for Summary Judgment ("Def.'s Mem.") at 15, ECF No. 51-1, because "[n]one of the male coworkers [the p]laintiff claims received transfers were similarly situated to [her,]" id.[4]  The plaintiff argues, on the other hand, that she "has shown [that the d]efendant's denial of her lateral transfer gives rise to an inference of discrimination."  Pl.'s Supp. Br. at 2.  In its supplemental response, the defendant alleges that the "[p]laintiff has offered no evidence that the transfer denial was based on her sex" and therefore summary judgment is required.  Def.'s Resp. at 1.  The plaintiff argues in response that summary judgment is inappropriate because the "[p]laintiff is similarly situated to the[ ] comparators[: (1) Reginald Robinson ("Robinson"), (2) Fernando Myrie ("Myrie"), and (3) J.S.,] and therefore, [she has] establish[ed] an inference of discrimination based on disparate treatment[.]"  Pl.'s Supp. Br. at 4.  "Although [the p]laintiff and comparators, J.S. and Myrie, at one point, worked under different unit and job titles, [she

---

[4] In the alternative, the plaintiff argues that she can provide additional evidence "that [the] employer's adverse employment action was motivated by discriminatory intent."  Pl.'s Supp. Br. at 6.  Specifically, the plaintiff alleges that the defendant engaged in discriminatory behavior by "(1) granting male colleagues transfers to other units, despite performance issues, while simultaneously denying [the p]laintiff's transfers to the similar units; (2) [imposing] selective discipline for alleged work incidents; and (3) den[ying] [her] proper training[,]" all of which "are indictive of discriminatory treatment."  Id.  But the plaintiff offers no additional evidence that would call for a different result.  Admittedly, plaintiffs are not required to provide comparator evidence in support of discrimination claims, see Dudley v. Wash. Metro. Area Transit Auth., 924 F. Supp. 2d 141, 161 (D.D.C. 2013) ("[The] plaintiff is correct that using a 'comparator' is not required"), but here, the plaintiff offers no additional evidence to support her alternative arguments, and in any event, the arguments fail because in Rice's years as supervisor, she granted transfers to sixteen female employees.  See Def.'s Mot. (Declaration of Benidia Rice ("Rice Decl.")) at ¶ 7, ECF No. 51-21; see also Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1154 (D.C. Cir. 2004) ("[O]nce the defendant has responded with rebuttal evidence, the factfinder normally proceeds to the ultimate issue on the merits to determine whether the employer intentionally discriminated against the plaintiff."); Glass v. Lahood, 786 F. Supp. 2d 189, 216 (D.D.C. 2011) ("[T]he ultimate selectee for the position was, like Glass, an African American, a consideration that 'cuts strongly against any inference of discrimination.'").  Therefore, for the reasons stated below, the Court concludes that the plaintiff has failed to show that the defendant's action was motivated by discriminatory intent.

nonetheless argues that this] [ ] does not preclude [a] finding that [these] employees are proper comparators for [her] discrimination claim." Id.  As to Robinson, "the [p]laintiff [contends that she] and [ ] Robinson had nearly identical duties . . . . [and she argues that they] were subject to the same principal goal and standard, which was to implement and enforce child custody and support orders."  Id. at 3.  The plaintiff notes that she and all of the proposed comparators at various times worked in the "Interstate or Enforcement Unit, conducting [similar] duties under the Support Enforcement Specialist job description."[5]  Id. at 5.

      In reply, the defendant maintains the argument made in its motion for summary judgment and argues that the plaintiff has yet to offer evidence that the denial of "[the p]laintiff's 2010 request for a lateral transfer [was] because [the p]laintiff is a woman."  Def.'s Resp. at 8. Specifically, the defendant argues that "the [plaintiff's] supplemental brief does not indicate any relevant change in law related to comparators, nor does it adequately address the arguments that the [defendant] made regarding comparators in its motion for summary judgment."  Id. at 6–7. In regards to the comparators offered by the plaintiff, the defendant argues that they "were transferred by someone other than [Benidia] Rice, [the supervisor that the plaintiff alleges denied her transfer request,] and those transfers also were made for reasons other than the employees' personal preference."  Id. at 12.

      The Court will first determine whether Robinson should be considered as a comparator, despite the plaintiff seeking to use him as a possible comparator long after discovery concluded, before then considering whether Myrie and J.S. are appropriate comparators in this case.

---

[5] In her original opposition to the defendant's motion for summary judgment, the plaintiff listed several other potential comparators.  See generally Pl.'s Opp'n.  However, in her supplemental memorandum, the plaintiff only alleges that the three aforementioned employees—i.e., Robinson, Myrie, and J.S.—are appropriate comparators. See generally Pl.'s Supp. Br.  Accordingly, the Court will only consider the proposed comparators the plaintiff currently uses, and will not consider the earlier proposed comparators.

### A. Whether the Court Will Consider Proposed Comparator Evidence Offered After the Close of Discovery

The Court first considers whether it should consider proposed comparator evidence the plaintiff presents for the first time in this case in her supplemental memorandum. The proposed comparator, Reginald Robinson, "was hired as a Paralegal Specialist for the Legal Unit." Pl.'s Supp. Br. at 3. As the Court already noted, supra Section III, "the [p]laintiff and [ ] Robinson [allegedly] had nearly identical duties [. . .] [and] were subject to the same principal goal and standard, which was to implement and enforce child custody and support orders." Id. at 3. However, the defendant contends that because the "[p]laintiff has mentioned Robinson as a comparator" for the first time in the Supplemental Briefing, the "[p]laintiff should be prevented from proffering Robinson as a comparator [ ] at this stage in the litigation[,]" because discovery has closed. Def.'s Resp. at 15. For the following reasons, the Court agrees with the defendant and will not consider this new evidence presented far outside of the discovery window that closed on May 29, 2018. See Order (July 26, 2017) at 1, ECF No. 39 (ordering that discovery would close on December 11, 2017); Minute ("Min.") Order (Oct. 12, 2017) (granting the parties' joint motion to extend the discovery deadline to January 4, 2018); Min. Order (Jan. 2, 2018) (granting the parties' joint motion to extend the discovery deadline to March 7, 2018); Min. Order (Feb. 20, 2018) (granting the parties' joint motion to extend the discovery deadline to April 19, 2018); Min. Order (Apr. 18, 2018) (granting the parties' joint motion to extend the discovery deadline to May 29, 2018).

"The Court may amend a scheduling order to reopen discovery under Federal Rule 16(b) and Local Rule 16.4[(a),]" United States v. Kellogg Brown & Root Servs., Inc., 285 F.R.D. 133, 136 (D.D.C. 2012); Fed. R. Civ. P. 16(b); LCvR 16.4(a), which as outlined above, the Court did on multiple occasions. Setting a discovery deadline is "intended to serve as

8

the unalterable road map (absent good cause) for the remainder of the case." Olgyay v. Soc'y for Env't. Graphic Design, Inc., 169 F.R.D. 219, 220 (D.D.C. 1996) (internal quotation marks omitted).  "The primary factor in determining whether good cause exists is the diligence of the party seeking discovery before the deadline [expired]." Kellogg Brown & Root Servs., Inc., 285 F.R.D. at 136; see, e.g., Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment[,] . . . [and] if that party was not diligent, the inquiry should end." (internal quotation marks omitted)).  Thus, courts will not consider post-discovery evidence when "a party has shown a lack of diligence during the allowed time period[.]" Dag Enters., Inc. v. Exxon Mobile Corp., 226 F.R.D. 95, 105 (D.D.C. 2004).  And, "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause." Id. (quoting Olgyay, 169 F.R.D. at 220) (citation omitted).

      Here, the defendant is correct that it would be inappropriate to permit the plaintiff to introduce a new comparator long after discovery has closed because "comparator discovery is not boundless." Lee v. Pub. Co. Acct. Oversight Bd., No. 21-cv-1006 (CKK), 2023 WL 4234660, at *4 (D.D.C. June 28, 2023).  Having previously granted several motions to extend the discovery deadline, the Court then denied a request for additional time to conduct discovery.  See Order (Sept. 8, 2022) at 1, ECF No. 73.  Despite that denial, in her supplemental brief, the plaintiff seeks to use Robinson as a comparator for the first time, even though she presumably knew about him because "[a]round October 2005, [he] was hired as a Paralegal Specialist for the Legal Unit[,]" Pl.'s Supp. Br. at 3, without seeking the Court's authority to conduct additional discovery, or providing good cause as to why the Court should consider the new proposed comparator evidence.  See generally Pl.'s Supp. Br.  "Because the deadline for discovery

9

expired, [the plaintiff was] obligated to seek a modification of the Scheduling Order by demonstrating 'good cause' before serving[, or in this case, seeking to present] additional [evidence identified far outside of the] discovery[ period.]" Dag Enters., Inc., 226 F.R.D. at 105.

Accordingly, because the Court long ago denied the plaintiff's oral motion to conduct additional discovery, and the plaintiff has not further sought to modify the scheduling order to allow additional discovery, the plaintiff has failed to "proceed [ ] with the normal processes of discovery[,]" id., by seeking to use Robinson as a comparator after the discovery deadline expired. Nor has the plaintiff presented good cause at this late date to again adjust the Court's scheduling order and permit further discovery. See generally Pl.'s Supp. Br. Therefore, the Court will not consider Robinson as a comparator. See, e.g., Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 462 (D.D.C. 2002) (denying the plaintiff's motion for additional discovery after the discovery date); see also Smith Wilson Co. v. Trading & Dev. Establishment, No. 90-cv-1125 (CRR), 1991 WL 171689, at *1 (D.D.C. Aug. 20, 1991) (finding that granting discovery continuance would "hamper the Court's ability to dispense justice to the numerous other parties competing for time slots on the court calendar.").[6]

### B. Timely Proposed Comparator Evidence

Having rejected the plaintiff's proposed comparator evidence that she disclosed outside the discovery period, the Court now considers the proposed comparators that were timely disclosed. The plaintiff argues that she has presented "similarly situated male comparators who

---

[6] The Court notes that, even if the plaintiff could seek to use Robinson as a purported comparator, he and the plaintiff were not similarly situated. The plaintiff admits that Robinson "was originally hired as a Paralegal Specialist for the Legal Unit[,]" but "he started working within the [Interstate Unit]." Pl.'s Supp. Br. Exhibit ("Ex.") A (Sworn Declaration of Mary Chambers ("Pl.'s Decl.")) at 2, ECF No. 80-1. Therefore, Robinson and the plaintiff were not "nearly identical[,]" because they were hired for different roles. See Pl.'s Supp. Br. at 15; see also Holbrook v. Reno, 196 F.3d 255, 262 (D.C. Cir. 1999) (rejecting the comparator because of the difference in seniority and supervisory responsibilities); Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (holding that a male associate lower in seniority did not serve as a suitable comparator to a female senior associate).

were given disparate treatment[.]" Pl.'s Supp. Br. at 3.  In regards to the two remaining proposed comparators—i.e., Fernando Myrie and J.S.—the defendant argues that these employees "were transferred by someone other than [Benidia] Rice, and those transfers also were made for reasons other than the employees' personal preference."  Def.'s Resp. at 12.

"In the absence of direct evidence, as here, the court analyzes Title VII claims under the well-established burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Cooper v. Am. Univ., No. 18-cv-1970 (TSC), 2021 WL 4318080, at *5 (D.D.C. Sept. 23, 2021).  Under this framework, the plaintiff bears the initial burden of establishing her prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802; Vickers v. Powell, 493 F.3d 186, 194 (D.C. Cir. 2007).  "However, the D.C. Circuit has clarified that the court's analysis of the first step of this framework—i.e., whether or not the plaintiff has established a prima facie case—is 'almost always irrelevant' and 'a largely unnecessary sideshow.'"  Sledge v. District of Columbia, 63 F. Supp. 3d 1, 16 (D.D.C. 2014) (quoting Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 492, 494 (D.C. Cir. 2008)).  Thus, "[w]here[, as here,] there has been an adverse employment action and the employer asserts a legitimate, non-discriminatory . . . reason for the decision, [the Court] focus[es] on pretext."  Oviedo v. Wash. Metro. Area Transit Auth., 948 F.3d 386, 395 (D.C. Cir. 2020).  Therefore, "the ultimate factual issue [becomes] 'whether the employee produced sufficient evidence for a reasonable jury to find the employer's justifications for the challenged action are merely pretext for underlying, unlawful discrimination.'"  Sledge, 63 F. Supp. 3d at 16 (quoting Byrd v. District of Columbia, 807 F. Supp. 2d 37, 72 (D.D.C. 2011)) (citation omitted).  In other words, once the employer offers a legitimate, nondiscriminatory justification for its action, "the McDonnell Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination

11

vel non." Jackson v. Gonzalez, 496 F.3d 703, 707 (citation and internal quotation marks omitted); see Vickers, 493 F.3d at 194.  Thus, after the employer makes such a showing, "the plaintiff must prove that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives." Jackson, 496 F.3d at 707.

"[A] plaintiff alleging discriminatory discipline [or, as here, the denial of a request to transfer to another position,] may 'establish pretext masking a discriminatory motive by presenting evidence suggesting that the employer treated other employees of a different race [or gender] more favorably in the same factual circumstances.'" Burton v. District of Columbia, 153 F. Supp. 3d 13, 66 (D.D.C. 2015) (quoting Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015)) (citation omitted).  For a female plaintiff to demonstrate that she was the victim of gender discrimination through the use of comparator evidence, "[she] must [ ] demonstrate that 'all of the relevant aspects of her employment situation were nearly identical to those of the male' employee." Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999) (quoting Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995)) (citations omitted) (internal quotation marks omitted); Wilson v. LaHood, 815 F. Supp. 2d 333, 338–339 (D.D.C. 2011) (same).  Factors to consider in making this assessment "include the similarity of the plaintiff's and the putative comparator's jobs and job duties, [and also] whether they were disciplined [or denied a transfer] by the same supervisor[.]" Burley, 801 F.3d at 301.  "The Court [ ] must focus its inquiry on whether the employees 'have [both] been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Kassim v. Inter-Continental Hotels Corp., 997 F. Supp. 2d 56, 65 (D.C. Cir. 2013) (quoting Childs-Pierce v. Util. Workers Union of Am., 383 F. Supp. 2d 60, 70 (D.D.C. 2005)), aff'd, 187

Fed. App'x 1 (D.C. Cir. 2006); see, e.g., Walker v. McCarthy, 170 F. Supp. 3d 94, 109 (D.D.C. 2016), aff'd, No. 16-cv-5192, 2017 WL 160806 (D.C. Cir. Jan. 3, 2017) ("[U]nlike the plaintiff's request to work temporarily from a [different] location . . . , the record evidence demonstrates that [the] proposed comparators [were] simply reassigned from one [ ] facility to another either for personal reasons or in connection with changes in their job responsibilities.").

> "By demonstrating that similarly situated employees were treated differently, such evidence tends to '[suggest] that the employer treated other employees' outside the plaintiff's protected class 'more favorably in the same factual circumstances,' giving rise to the inference that the plaintiff was treated less favorable on account of his or her protected status."

Walker, 170 F. Supp. 3d at 108 (quoting Brady, 520 F.3d at 495).

"To survive summary judgment, an employee claiming a discriminatory transfer denial [ ] must show not only that the employee's transfer request was rejected, but that it 'was rejected under circumstances which give rise to an inference of discrimination.'" Chambers, 35 F.4th at 83 (quoting Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993)) (citations omitted). However, "where a plaintiff relying on comparator evidence fails to produce 'evidence that the comparators were actually similarly situated to h[er], an inference of falsity or discrimination is not reasonable,' and summary judgment is appropriate." Walker, 170 F. Supp. 3d at 108 (quoting Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008)) (internal quotation marks omitted).

Indeed, "the court 'must rely on evidence substantiated by the record' to conclude that the plaintiff and an asserted comparator are similarly situated." Burton, 153 F. Supp. 3d at 67–68 (quoting Anyaso v. United States Capitol Police, 39 F.Supp.3d 34, 43 (D.D.C. 2014)). "If a comparator employee does not hold the same position as the plaintiff, the comparator is not similarly situated." White v. Tapella, 876 F. Supp. 2d 58, 70 (D.D.C. 2012). "The lack of

13

evidence of similarity [between comparators and the plaintiff] is itself reason to grant summary judgment." Gulley v. District of Columbia, 474 F. Supp. 3d 154, 167 (D.D.C. 2020).

Here, the plaintiff essentially relies on comparator evidence as circumstantially supporting her sex discrimination claim when she was denied her requests to transfer to another unit because.  The Court will consider both of the remaining putative comparators in turn.

**1. Fernando Myrie**

The first proposed comparator, Fernando Myrie, "was transferred to the Enforcement Unit under the position of Support Enforcement Specialist[,]" Pl.'s Supp. Br. at 4, and the plaintiff claims that she and Myrie shared similar responsibilities, such as: "(1) reviewing civil and criminal contempt motions regarding adjustments, (2) [reviewing] motion[s] for support medical modifications, and medical terminations, and (3) interviewing custodial and non-custodial parents[,]" id.  The plaintiff contends that "Myrie requested and was approved [for] a transfer to the Intake Unit and subsequently various other units." Id.  In response, the defendant represents that "Myrie was transferred against his will after he 'was written up for being rude [and] disrespectful on a daily basis,'" Def.'s Resp. at 13 (quoting Def.'s Mot. Exhibit ("Ex.") 1 (Plaintiff's Deposition Volume I ("Chambers Dep. I")) at 56:20–57:13, ECF No. 51-5), and "[the] [District of Columbia Office of the Attorney General or] [(']OAG[')]'s Immediate Office, not [ ] Rice" made the decision to transfer Myrie, "making him an inapt comparator[,]" id.; see id. Ex. 13 (Plaintiff's Answer to Interrogatory #4 ("Pl.'s Answer to Interrog.")) at 3, ECF No. 51-17; see Def.'s Mot. Ex. 2 (Rice Deposition ("Rice Dep.")) at 19:7–13, ECF No. 51-6 (Rice's testimony that she did not make the decision to transfer Myrie).  The defendant therefore contends that "because Myrie's transfer was involuntary, no reasonable jury could find he was treated more favorably than Chambers[,]" who requested a voluntary transfer.  Def.'s Resp. at 13.

14

Based on this record, the plaintiff has failed to "demonstrate that 'all of the relevant aspects of her employment situation were nearly identical to those of the male' employee." Holbrook, 196 F.3d at 261 (quoting Neuren, 43 F.3d at 1514) (citation omitted) (internal quotation marks omitted).  Therefore, contrary to the plaintiff's position, Myrie is not "nearly identical[,]" Holbrook, 196 F.3d at 261 (internal quotation marks omitted), or "similarly situated[,]" id., to the plaintiff's situation, and, therefore, is an improper comparator.  Although the plaintiff claims Myrie received favorable treatment after he "requested and was approved a transfer to the Intake Unit and [ ] other units[,]" Pl.'s Supp. Br. at 4, the record does not support this position, see Def.'s Resp. at 13; Def.'s Mot. Ex. 1 (Chambers Dep. I) at 56:20–57:13 (the plaintiff acknowledging her knowledge of Myrie's transfers).  As the plaintiff admits, Myrie "was written up for being rude, disrespectful[,]" id. Ex. 1 (Chambers Dep. I) at 57:11–13, and his "first transfer to the Intake Unit was against his will[,]" Pl.'s Opp'n Ex. A (Affidavit in Support of Plaintiff Mary Elizabeth Chambers' Memorandum in Opposition to Defendant District of Columbia Motion for Summary Judgment ("Pl.'s Aff.")) at ¶ 63, ECF No. 58-5.  Therefore, because Myrie was transferred for disciplinary reasons, the plaintiff has failed to show that the defendant treated Myrie more favorably than she was treated or that they were similarly situated.  See id.; e.g., Cox v. Nielsen, No. 1:16-cv-01966 (TNM), 2019 WL 1359806, at *4 (D.D.C. Mar. 26, 2019) (rejecting the plaintiff's proposed comparators because they could not have been treated more favorably where they received disciplinary actions—i.e., termination).  Accordingly, Myrie cannot serve as a comparator to the plaintiff because his transfer was involuntary and due to disciplinary reasons, rather than the consequence of preferential treatment.

15

Furthermore, "there are significant gaps in [the plaintiff's] comparator evidence [in regards to the decision-maker or supervisor,]" Gulley, 474 F. Supp. 3d at 167, because the plaintiff has not established that the transfer decisions was made by the same supervisor. The plaintiff contends that her transfer request were made by her "Former Director, Benidia Rice." Pl.'s Supp. Br. Ex. A (Sworn Declaration of Mary Chambers ("Pl.'s Decl.")) at 3, ¶ 4, ECF No. 80-1. However, in her deposition, Rice denied that she supervised the plaintiff, but rather, she was the "fourth-line[,]" Def.'s Mot. Ex. 2 (Rice Dep.) at 6:4–13, of supervision of the plaintiff and final decisions regarding employee transfer requests "[we]re made by the immediate office[,]" id. Ex. 2 (Rice Dep.) at 10:21–22, as was done in this case, see id. Ex. 2 (Rice Dep.) at 19:7–13. Thus, the evidence before the Court shows that the plaintiff and Myrie did not have the same supervisor, nor were their transfer decisions made by the same supervisor. See Def.'s Resp. at 13; Def.'s Mot. Ex. 2 (Rice Dep.) at 6:4–13 (Rice's testimony that she did not supervise the plaintiff); id. Ex. 2 (Rice Dep.) at 7:12–22 (Rice's testimony that Patricia Williams was the plaintiff's direct supervisor); Pl.'s Opp'n at 3 (plaintiff's acknowledgement that her initial transfer request was made to Assistant Program Chief Walter Howell). Because the plaintiff and Myrie did not appear to share the same supervisor, and their transfer decisions were not made by the same supervisor, "the plaintiff[] [has] [failed to carry her] burden to show that 'all of the relevant aspects of her employment situation were nearly identical' to that of the [purported] comparator[]." Cox, 2019 WL 1359806, at *18 (quoting Baker v. Potter, 294 F. Supp. 2d 33, 40 (D.D.C. 2003)). Accordingly, the Court concludes that the plaintiff and Myrie were not similarly situated employees. See, e.g., Gulley, 474 F. Supp. 3d at 167 ("[T]he lack of evidence of similarity [between the plaintiff and the proposed comparator] is itself reason to grant summary judgment."); id. (denying consideration of the proposed comparators because "[a]lthough the

16

same general disciplinary review process applied to most of the comparators' infractions, it is far from clear that these comparators 'were disciplined by the same supervisor' as [the plaintiff]" (quoting Wheeler v. Geo. Univ. Hosp., 812 F.3d 1109, 1116 (D.C. Cir. 2016)).

**2.  J.S. (James Sager)**

The final comparator proposed by the plaintiff, J.S., "was hired around May 2006 as a Paralegal Specialist in the Legal Unit[,] but operated as a Support Enforcement Specialist in the [Enforcement Unit]."  Pl.'s Supp. Br. at 4.  The plaintiff claims that J.S. is an appropriate comparator because J.S. also worked in the Enforcement Unit and "was tasked with the same caseloads and objectives" as the plaintiff.  Id.  Unlike the plaintiff, J.S. received a transfer from a position "as Support Enforcement Specialist from the Child Support Services Division to [a position in the] OAG's Family Services Division."  Id.  The defendant argues that the Court should not accept J.S. as a comparator because his transfer stemmed from complaints about his "odd behavior, which caused people to fear for their safety[.]"  Def.'s Resp. at 14 (quoting Def.'s Mot. Ex. 14 (Tarifah Coaxum Deposition ("Coaxum Dep.")) at 28:9–29:9, ECF No. 51-18) (internal quotation marks omitted).  According to the defendant, the decision to transfer J.S. was made by a manager in the "OAG's Immediate Office, not Rice[,]" id., "to protect him from mistreatment due to his behavioral traits[,]" id. at 15.  The defendant maintains that the plaintiff "provides no facts describing the reasons for [J.S.]'s transfer, who made the decision to transfer him, or when his transfer occurred[,]" id. at 14, and therefore "[t]he District's evidence [ ] stands unrefuted[,]" id.

Again, the Court agrees that J.S. is not an appropriate comparator because "the plaintiff [has not] show[n] that th[is] 'comparable[]' [is] similarly-situated in all respects[.]"  Phillips v. Holladay Prop. Servs., Inc., 837 F.Supp. 32, 37 (D.D.C. 1996) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)) (emphasis in original).  Notably, J.S. differs from the

17

plaintiff because he was transferred after his "odd behavior [ ] caused people to fear for their safety[.]" Def.'s Resp. at 14 (quoting Def.'s Mot. Ex. 14 (Coaxum Dep.) at 28:9–29:9) (internal quotation marks omitted); see also Def.'s Mot. Ex. 2 (Rice Dep.) at 53:9–54:11 (Rice's testimony that she made the decision to transfer J.S. for "significant personnel issues"). The transfer decisions as to both the plaintiff and J.S. were made for different reasons and they therefore are not "nearly identical," Holbrook, 196 F.3d at 261, to one another. J.S. was involuntarily transferred due to his "odd behavior[,]" Def.'s Resp. at 14 (quoting Coaxum Dep. at 28:9–29:9) (internal quotation marks omitted), and therefore, was not "subject to the same standards[,]" Childs-Pierce, 383 F. Supp. 2d at 70, as the plaintiff in regards to his transfer decisions, see Kassim, 997 F. Supp. 2d at 64 ("Both the plaintiff and the comparator must have done substantially the same thing and yet received different punishments [or outcomes]."); see also Walker, 170 F. Supp. 3d at 109 (finding the proposed comparators inappropriate because unlike the plaintiff, they received transfers for "personal reasons or in connection with changes in their job responsibilities"); see, e.g., Risch v. Cardona, No. 20-cv-3213 (ZMF), 2023 WL 5317925, at *12 (D.D.C. Aug. 18, 2023) ("[The] [p]laintiff's [accommodation] request differed from her proffered comparators in that it was not justified by a business of staffing need[.]"). At bottom, J.S. was not treated "more favorably[,]" Walker, 170 F. Supp. 3d at 108 (internal quotation marks omitted), by the defendant, nor did J.S.'s transfer present "the same factual circumstances," id., to the plaintiff; rather, he was transferred for safety reasons, see Def.'s Resp. at 14 (quoting Def.'s Mot. Ex. 14 (Coaxum Dep.) at 28:9–29:9) (explaining that complaints from coworkers regarding J.S.'s behavior led to an investigation that ultimately resulted in his transfer); see also Def.'s Mot. Ex. 2 (Rice Dep.) at 10:20–11:2 (Rice's testimony that the plaintiff's transfer request was denied due to lack of need in the unit to which she sought

reassignment); see also id. Ex. 3 (Email Chain September 10, 2010, to September 15, 2010 ("Sept. 2010 Emails")) at 1, ECF No. 51-7 (Rice's approval of an email to the plaintiff explaining that her request "d[id] not fit into management's immediate plans for the [unit to which the plaintiff sought a transfer]").

Based on this record, the plaintiff has failed to "demonstrate that [J.S. and Myrie were] similarly situated employees[, or that they] were treated differently[ than she was.]" Def.'s Resp. at 14. The District's decisions to transfer J.S. and Myrie for legitimate, non-discriminatory reasons do not create an "inference that the plaintiff was treated less favorabl[y] on account of [his or her] protected status [sex]." Id. "'At the summary judgment stage, . . . [because] [the] plaintiff rel[ies exclusively] on comparator evidence [and has] fail[ed] to produce evidence that the [purported] comparators were actually similarly situated to h[er], an inference of falsity or discrimination is not reasonable, and summary judgment is appropriate.'" Gulley, 474 F. Supp. 3d at 167 (quoting Walker, 170 F. Supp. 3d at 108).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment.

**SO ORDERED** this 12th day of August, 2024.[7]

REGGIE B. WALTON<br>
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.